# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

## CLERK'S CERTIFICATE AND APPEALS COVER SHEET

## ABBREVIATED ELECTRONIC RECORD

Case Caption: _Planned Parenthood Federation of America, Inc. et al v. Kennedy et al_

District Court Number: 25cv11913-IT

Fee:   Paid?   Yes _____   No _____   Government filer _X_   _In Forma Pauperis_ Yes _____   No _____

Motions Pending   Yes _X_ No _____         Sealed documents   Yes _____ No _X_
_If yes, document #_   4                   _If yes, document #_ _____

_Ex parte_ documents   Yes _____ No _X_    Transcripts   Yes _____ No _X_
_If yes, document #_ _____       _If yes, document #_ _____

Notice of Appeal filed by: Plaintiff/Petitioner _____   Defendant/Respondent _X_   Other: _____

Appeal from:

## #62 Memorandum and Order

Other information:

      I, Robert M. Farrell, Clerk of the United States District Court for the District of Massachusetts, do hereby certify that the annexed electronic documents:

## #62 and #63

with the electronic docket sheet, constitute the abbreviated record on appeal in the above entitled case for the Notice of Appeal # _63_ filed on _July 22, 2025_.

      In testimony whereof, I hereunto set my hand and affix the seal of this Court on _July 22, 2025_.

**ROBERT M. FARRELL**
Clerk of Court

/s/Matthew A. Paine
Deputy Clerk

COURT OF APPEALS DOCKET NUMBER ASSIGNED: _____

**PLEASE RETURN TO THE USDC CLERK'S OFFICE**

APPEAL

# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: 1:25−cv−11913−IT

Planned Parenthood Federation of America, Inc. et al v. Kennedy et al
Assigned to: Judge Indira Talwani
Cause: 28:2201 Injunction

Date Filed: 07/07/2025
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Planned Parenthood Federation of America, Inc.**

represented by

**Alan E. Schoenfeld**
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212−937−7294
Fax: 212−937−8888
Email: alan.schoenfeld@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Albinas Prizgintas**
Wilmer Cutler Pickering Hale and Dorr LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
202−663−6719
Fax: 202−663−6363
Email: albinas.prizgintas@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Alexander Miller**
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212−295−6272
Email: alex.miller@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**C. Peyton Humphreville**
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
212−965−7000
Email: catherine.humphreville@ppfa.org
*ATTORNEY TO BE NOTICED*

**Cassandra Mitchell**
Wilmer Cutler Pickering Hale and Dorr LLP
7 World Trade Center
250 Greenwich Street
New York City, NY 10007
212−937−7273
Email: cassie.mitchell@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Emily Nestler**
Planned Parenthood Federation of America
Planned Parenthood Federation of America
1110 Vermont Avenue NW
Washington, DC 20005
202−973−4800
Email: emily.nestler@ppfa.org
*ATTORNEY TO BE NOTICED*

**Jennifer Sandman**
Planned Parenthood Federation of America
Public Policy Litigation & Law
123 William Street
Floor 9
New York, NY 10038
212−261−4584
Email: jennifer.sandman@ppfa.org
*ATTORNEY TO BE NOTICED*

**Kyla Eastling**
Planned Parenthood Federation of America
123 William St.
Floor 9
New York, NY 10038
858−692−5797
Email: kyla.eastling@ppfa.org
*ATTORNEY TO BE NOTICED*

**Sharon Hogue**
Wilmer Hale LLP
60 State Street
Boston, MA 02109
617−526−6702
Email: sharon.hogue@wilmerhale.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Planned Parenthood League of Massachusetts

represented by
**Alan E. Schoenfeld**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Albinas Prizgintas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**C. Peyton Humphreville**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cassandra Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Nestler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Sandman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyla Eastling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Hogue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Planned Parenthood Association of Utah** | represented by | **Alan E. Schoenfeld**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Albinas Prizgintas**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alexander Miller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**C. Peyton Humphreville**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cassandra Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emily Nestler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer Sandman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kyla Eastling**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Hogue**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Robert F. Kennedy, Jr.**
*in his official capacity as Secretary of the*
*U.S. Department of Health and Human*
*Services*

represented by  **Emily Margaret Hall**
DOJ−Civ
Civil Division, Office of the Assistant
Attorney General
950 Pennsylvania Ave. NW
Washington, DC 20530
202−307−6482
Email: emily.hall@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elisabeth Neylan**
DOJ−Civ
1100 L St. NW
Washington, DC 20005
771−217−8180
Email: elisabeth.j.neylan@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Elizabeth Themins Hedges**
DOJ−Civ
950 Pennsylvania Ave NW
Washington, DC 20530
771−209−1978
Email: elizabeth.t.hedges@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Health and**
**Human Services**

represented by  **Emily Margaret Hall**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Elisabeth Neylan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Themins Hedges**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Mehmet Oz**
*in his official capacity as Administrator
of the Centers for Medicare & Medicaid
Services*

represented by **Emily Margaret Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elisabeth Neylan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Themins Hedges**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Centers for Medicare & Medicaid
Services**

represented by **Emily Margaret Hall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elisabeth Neylan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Themins Hedges**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**American Center for Law & Justice**
201 Maryland Ave., NE, DC 20002

represented by **Olivia F. Summers**
ACLJ
1000 Regent University Dr.
Ste 422
Virginia Beach, VA 23464
757−955−8176
Email: osummers@aclj.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jordan A. Sekulow**
American Center for Law and Justice

201 Maryland Ave., NE
Washington, DC 20002
202−546−8890
Email: jordansekulow@aclj.org
*ATTORNEY TO BE NOTICED*

**Nathan Jeremiah Moelker**
The American Center for Law and Justice
201 Maryland Ave NE
Washington, DC 20002
724−987−8477
Email: nmoelker@aclj.org
*ATTORNEY TO BE NOTICED*

**Thomas M. Harvey**
Law Office of Thomas M. Harvey
22 Mill Street
Suite 408
Arlington, MA 02476−4744
617−710−3616
Fax: 781−643−1126
Email: tharveyesq@aol.com
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 07/07/2025 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against All Defendants Filing fee: $ 405, receipt number AMADC−11104085 (Fee Status: Filing Fee paid), filed by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 2 | CORPORATE DISCLOSURE STATEMENT by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 3 | MOTION for Leave to File Excess Pages by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts.(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 4 | Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Text of Proposed Order)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 5 | MEMORANDUM in Support re 4 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Exhibit 1 − Declaration of Kimberly Custer, # 2 Exhibit 2 − Declaration of Dominique Lee, # 3 Exhibit 3 − Declaration of Shireen Ghorbani, # 4 Exhibit 4 − Declaration of Jenna Tosh, # 5 Exhibit 5 − Declaration of |

| | | |
|---|---|---|
| | | Claire D. Brindis)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 6 | NOTICE of Appearance by Sharon Hogue on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 7 | MOTION for Leave to Appear Pro Hac Vice for admission of Alan Schoenfeld Filing fee: $ 125, receipt number AMADC−11104437 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Alan Schoenfeld)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 8 | MOTION for Leave to Appear Pro Hac Vice for admission of Albinas Prizgintas Filing fee: $ 125, receipt number AMADC−11104462 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Albinas Prizgintas)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 9 | MOTION for Leave to Appear Pro Hac Vice for admission of Cassandra Mitchell Filing fee: $ 125, receipt number AMADC−11104475 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Cassandra Mitchell)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 10 | MOTION for Leave to Appear Pro Hac Vice for admission of Alex W. Miller Filing fee: $ 125, receipt number AMADC−11104496 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Alex W. Miller)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice for admission of Jennifer Sandman Filing fee: $ 125, receipt number AMADC−11104533 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Jennifer Sandman)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice for admission of Emily Nestler Filing fee: $ 125, receipt number AMADC−11104556 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Emily Nestler)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice for admission of C. Peyton Humphreville Filing fee: $ 125, receipt number AMADC−11104566 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of C. Peyton Humphreville)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 14 | MOTION for Leave to Appear Pro Hac Vice for admission of Kyla Eastling Filing fee: $ 125, receipt number AMADC−11104577 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Declaration of Kyla Eastling)(Hogue, Sharon) (Entered: 07/07/2025) |
| 07/07/2025 | 15 | |

| | | ELECTRONIC NOTICE of Case Assignment. Judge Indira Talwani assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Jennifer C. Boal. (NMC) (Entered: 07/07/2025) |
|---|---|---|
| 07/07/2025 | 16 | Summons Issued as to Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (SEC) (Entered: 07/07/2025) |
| 07/07/2025 | 17 | Judge Indira Talwani: ELECTRONIC ORDER granting *nunc pro tunc* Motion for Leave to File Excess Pages 3 . (SEC) (Entered: 07/07/2025) |
| 07/07/2025 | 18 | Judge Indira Talwani: TEMPORARY RESTRAINING ORDER. See attached. (SEC) (Entered: 07/07/2025) |
| 07/07/2025 | 19 | Judge Indira Talwani: ELECTRONIC ORDER: Defendants shall file any opposition to the Plaintiffs' request for a preliminary injunction, see Motion 4 , no later than July 14, 2025. The clerk shall set a hearing on the motion for the morning of July 21, 2025. (SEC) (Entered: 07/07/2025) |
| 07/07/2025 | 20 | Judge Indira Talwani: ELECTRONIC ORDER entered granting 7 Motion for Leave to Appear Pro Hac Vice; granting 8 Motion for Leave to Appear Pro Hac Vice; granting 9 Motion for Leave to Appear Pro Hac Vice; granting 10 Motion for Leave to Appear Pro Hac Vice; granting 11 Motion for Leave to Appear Pro Hac Vice; granting 12 Motion for Leave to Appear Pro Hac Vice; granting 13 Motion for Leave to Appear Pro Hac Vice; granting 14 Motion for Leave to Appear Pro Hac Vice. Added Alan Schoenfeld, Albinas Prizgintas, Cassandra Mitchell, Alex W. Miller, Jennifer Sandman, Emily Nestler, C. Peyton Humphreville, and Kyla Eastling.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm.<br><br>A Notice of Appearance must be entered on the docket by each of the newly admitted attorneys.<br><br>(SEC) (Entered: 07/07/2025) |
| 07/08/2025 | 21 | ELECTRONIC NOTICE Setting Hearing on Motion 4 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction:* Motion Hearing set for 7/21/2025 11:00 AM in Courtroom 9 (In person only) before Judge Indira Talwani. (GAM) (Entered: 07/08/2025) |
| 07/08/2025 | 22 | NOTICE of Appearance by Alan E. Schoenfeld on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned |

| | | |
|---|---|---|
| | | Parenthood League of Massachusetts (Schoenfeld, Alan) (Entered: 07/08/2025) |
| 07/08/2025 | 23 | MOTION to Continue Hearing on Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction to July 24, 2025 by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts.(Schoenfeld, Alan) (Entered: 07/08/2025) |
| 07/09/2025 | 24 | Opposition re 23 MOTION to Continue Hearing on Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction to July 24, 2025 filed by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. (Neylan, Elisabeth) (Entered: 07/09/2025) |
| 07/09/2025 | 25 | Judge Indira Talwani: ELECTRONIC ORDER: Plaintiffs' Motion to Continue Hearing 23 seeks to continue the July 21, 2025 hearing on Plaintiffs' Motion for a Preliminary Injunction 4 , or in the alternative, to reschedule the hearing for July 18, 2025, based on Plaintiffs' counsel's schedule. Defendants request that the court deny Plaintiffs' Motion for lack of good cause to delay the hearing where Plaintiffs are represented by multiple counsel and where Defendants do not oppose Plaintiffs' remote attendance at the hearing. Defendants' Opp. 1−2 24 . Defendants note further that where a TRO has been entered, the hearing should be scheduled "at the earliest possible time," and that if the hearing is rescheduled, it should be set for July 17 or July 18, 2025, while maintaining existing briefing schedules. Id. (citing Fed. R. Civ. P. 65(b)(3)). <br><br>Where both sides are available for an earlier hearing on July 18, 2025, the clerk shall reset the hearing on Plaintiffs' Motion for Preliminary Injunction 4 for the morning of July 18, 2025. Defendants' time to file an opposition to Plaintiffs' Motion for Preliminary Injunction 4 remains set for July 14, 2025. Plaintiffs' Motion to Continue Hearing 23 is denied as moot.(SEC) <br><br>(Entered: 07/09/2025) |
| 07/09/2025 | 26 | ELECTRONIC NOTICE Resetting Hearing on Motion 4 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* : Motion Hearing RESET for 7/18/2025 09:00 AM in Courtroom 9 (In person only) before Judge Indira Talwani. (SEC) (Entered: 07/09/2025) |
| 07/09/2025 | 27 | NOTICE of Appearance by Elisabeth Neylan on behalf of Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services (Neylan, Elisabeth) (Entered: 07/09/2025) |
| 07/10/2025 | 28 | NOTICE of Appearance by Elizabeth Themins Hedges on behalf of Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services (Hedges, Elizabeth) (Entered: 07/10/2025) |
| 07/11/2025 | 29 | MOTION to Vacate 18 Temporary Restraining Order *Motion to Dissolve* by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. ~~(Attachments: # 1 Memorandum)~~(Hedges, Elizabeth) Memorandum in Support filed as own entry. See 30 (SEC). (Entered: 07/11/2025) |
| 07/11/2025 | 30 | MEMORANDUM in Support re 29 MOTION to Vacate 18 Temporary Restraining Order *Motion to Dissolve* filed by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. (SEC) (Entered: 07/11/2025) |

| 07/11/2025 | 31 | NOTICE of Appearance by Thomas M. Harvey on behalf of American Center for Law & Justice (Harvey, Thomas) (Entered: 07/11/2025) |
|---|---|---|
| 07/11/2025 | 32 | MOTION for Leave to Appear Pro Hac Vice for admission of Nathan J. Moelker Filing fee: $ 125, receipt number AMADC−11117447 by American Center for Law & Justice.(Harvey, Thomas) (Entered: 07/11/2025) |
| 07/11/2025 | 33 | MOTION for Leave to Appear Pro Hac Vice for admission of Jordan A. Sekulow Filing fee: $ 125, receipt number AMADC−11117514 by American Center for Law & Justice. (Attachments: # 1 Exhibit amicus declaration)(Harvey, Thomas) (Entered: 07/11/2025) |
| 07/11/2025 | 34 | MOTION for Leave to Appear Pro Hac Vice for admission of Olivia F. Summers Filing fee: $ 125, receipt number AMADC−11117543 by American Center for Law & Justice. (Attachments: # 1 Exhibit amicus declaration)(Harvey, Thomas) (Entered: 07/11/2025) |
| 07/11/2025 | 35 | STATUS REPORT by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. (Neylan, Elisabeth) (Entered: 07/11/2025) |
| 07/11/2025 | 36 | Assented to MOTION for Leave to File *Amicus Curiae Brief* by American Center for Law & Justice. (Attachments: # 1 Certificate of Compliance)(Harvey, Thomas) (Additional attachment(s) added on 7/11/2025: # 2 Proposed Amicus Brief) (SEC). (Entered: 07/11/2025) |
| 07/11/2025 | 37 | ~~AMICUS BRIEF filed by American Center for Law & Justice . (Harvey, Thomas)~~ Proposed Amicus Brief filed as attachment to motion. See 36 −2 (SEC). (Entered: 07/11/2025) |
| 07/11/2025 | 38 | NOTICE of Appearance by Alexander Miller on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Miller, Alexander) (Entered: 07/11/2025) |
| 07/11/2025 | 39 | NOTICE of Appearance by Albinas Prizgintas on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Prizgintas, Albinas) (Entered: 07/11/2025) |
| 07/11/2025 | 40 | NOTICE of Appearance by Cassandra Mitchell on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Mitchell, Cassandra) (Entered: 07/11/2025) |
| 07/11/2025 | 41 | Judge Indira Talwani: ELECTRONIC ORDER **allowing** 36 Assented to MOTION for Leave to File *Amicus Curiae Brief*. Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include − Leave to file granted on (date of order)− in the caption of the document. (SEC) (Entered: 07/11/2025) |
| 07/11/2025 | 42 | Judge Indira Talwani: ELECTRONIC ORDER entered granting 32 Motion for Leave to Appear Pro Hac Vice; granting 33 Motion for Leave to Appear Pro Hac Vice; granting 34 Motion for Leave to Appear Pro Hac Vice. Added Nathan J. Moelker, Jordan A. Sekulow, and Olivia F. Summers. |

| | | |
|---|---|---|
| | | **Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions<br>https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm.<br><br>A Notice of Appearance must be entered on the docket by each of the newly admitted attorneys.<br><br>(SEC) (Entered: 07/11/2025) |
| 07/11/2025 | 43 | NOTICE of Appearance by Olivia F. Summers on behalf of American Center for Law & Justice (Summers, Olivia) (Entered: 07/11/2025) |
| 07/11/2025 | 44 | AMICUS BRIEF filed by American Center for Law & Justice . (Summers, Olivia) (Entered: 07/11/2025) |
| 07/11/2025 | 45 | NOTICE of Appearance by Nathan Jeremiah Moelker on behalf of American Center for Law & Justice (Moelker, Nathan) (Entered: 07/11/2025) |
| 07/11/2025 | 46 | Judge Indira Talwani: ORDER entered on Defendants' Motion to Vacate 29 . The court dissolves the Temporary Restraining Order 18 issued on July 7, 2025, and enters this AmendedTemporary Restraining Order for the reasons set forth therein. See attached Amended Temporary Restraining Order. (Talwani, Indira) (Entered: 07/11/2025) |
| 07/13/2025 | 47 | NOTICE of Appearance by Emily Margaret Hall on behalf of Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services (Hall, Emily) (Entered: 07/13/2025) |
| 07/14/2025 | 48 | NOTICE of Appearance by C. Peyton Humphreville on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Humphreville, C. Peyton) (Entered: 07/14/2025) |
| 07/14/2025 | 49 | MOTION for Leave to File Excess Pages by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services.(Neylan, Elisabeth) (Entered: 07/14/2025) |
| 07/14/2025 | 50 | NOTICE of Appearance by C. Peyton Humphreville on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Humphreville, C. Peyton) (Entered: 07/14/2025) |
| 07/14/2025 | 51 | Judge Indira Talwani: ELECTRONIC ORDER **allowing** 49 MOTION for Leave to File Excess Pages; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include − Leave to file granted on (date of order)− in the caption of the document. (SEC) (Entered: 07/14/2025) |
| 07/14/2025 | 52 | NOTICE of Appearance by Jennifer Sandman on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Sandman, Jennifer) (Entered: 07/14/2025) |

| | | |
|---|---|---|
| 07/14/2025 | 53 | MEMORANDUM in Opposition re 4 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. (Attachments: # 1 Affidavit Costello Declaration, # 2 Affidavit Snyder Declaration)(Neylan, Elisabeth) Modified on 7/15/2025 to correct heading error (SEC). (Entered: 07/14/2025) |
| 07/15/2025 | 54 | NOTICE of Appearance by Jordan A. Sekulow on behalf of American Center for Law & Justice (Sekulow, Jordan) (Entered: 07/15/2025) |
| 07/15/2025 | 55 | NOTICE by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts *of Undertaking on Temporary Restraining Order* (Schoenfeld, Alan) (Entered: 07/15/2025) |
| 07/15/2025 | 56 | NOTICE of Appearance by Emily Nestler on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Nestler, Emily) (Entered: 07/15/2025) |
| 07/16/2025 | 57 | NOTICE of Appearance by Kyla Eastling on behalf of Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts (Eastling, Kyla) (Entered: 07/16/2025) |
| 07/17/2025 | 58 | MOTION for Leave to File *a Reply in Support of Motion for Preliminary Injunction* by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Exhibit A − Plaintiffs' Proposed Reply, # 2 Exhibit 1)(Schoenfeld, Alan) (Entered: 07/17/2025) |
| 07/17/2025 | 59 | Judge Indira Talwani: ELECTRONIC ORDER **allowing** 58 MOTION for Leave to File a Reply in Support of Motion for Preliminary Injunction.<br><br>Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include − Leave to file granted on (date of order)− in the caption of the document. (SEC)<br><br>(Entered: 07/17/2025) |
| 07/17/2025 | 60 | REPLY to Response to 4 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Planned Parenthood Association of Utah, Planned Parenthood Federation of America, Inc., Planned Parenthood League of Massachusetts. (Attachments: # 1 Exhibit 1)(Schoenfeld, Alan) (Entered: 07/17/2025) |
| 07/18/2025 | 61 | Electronic Clerk's Notes for proceedings held before Judge Indira Talwani: Motion Hearing held on 7/18/2025 re 4 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Planned Parenthood League of Massachusetts, Planned Parenthood Federation of America, Inc., Planned Parenthood Association of Utah. Case called. Court heard argument from counsel. Order to issue by 7/21/2025.<br><br>(Court Reporter: Robert Paschal at rwp.reporter@gmail.com.)(Attorneys present: Kyla Eastling, Sharon Hogue, C. Peyton Humphreville, Alexander Miller, Emily Nestler, Albinas Prizgintas, Alan E. Schoenfeld, Emily Margaret Hall, Elizabeth Themins Hedges) (GAM) (Entered: 07/18/2025) |

| | | |
|---|---|---|
| 07/21/2025 | 62 | Judge Indira Talwani: Plaintiffs' Emergency Motion for a Preliminary Injunction [Doc. No. 4] is GRANTED in part and otherwise remains under advisement. See attached Memorandum and Order. (Talwani, Indira) (Entered: 07/21/2025) |
| 07/22/2025 | 63 | NOTICE OF APPEAL as to 62 Order on Motion for TRO by Centers for Medicare & Medicaid Services, Robert F. Kennedy, Jr, Mehmet Oz, U.S. Department of Health and Human Services. Fee Status: US Government.<br><br>NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf. US District Court Clerk to deliver official record to Court of Appeals by 8/11/2025. (Hall, Emily) (Entered: 07/22/2025)** |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS, and PLANNED PARENTHOOD ASSOCIATION OF UTAH, | * * * * * * |
| Plaintiffs, | * * |
| v. | * * |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of Health and Human Services, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services, and CENTERS FOR MEDICARE & MEDICAID SERVICES, | * * * * * * * * * * |
| Defendants. | * |

Civil Action No. 1:25-cv-11913-IT

MEMORANDUM & ORDER

July 21, 2025

TALWANI, D.J.

        In this action, Plaintiffs Planned Parenthood Federation of America, Inc. ("Planned

Parenthood Federation"), Planned Parenthood League of Massachusetts ("Planned Parenthood

Massachusetts"), and Planned Parenthood Association of Utah ("Planned Parenthood Utah")

allege that Section 71113 of An Act to provide for reconciliation pursuant to title II of H. Con.

Res. 14 ("the Reconciliation Act"), Pub. L. No. 119-21, 139 Stat. 72, 300-01 (July 4, 2025),

violates the United States Constitution by subjecting Planned Parenthood Federation and its

Members to a bill of attainder, retaliating against them in violation of the First Amendment, and

denying them equal protection of law. Plaintiffs assert further that the provision, which directs that certain entities may not receive federal Medicaid funds for a one-year period ("Prohibited Entities"), should not be read to apply to Planned Parenthood Members who do not independently satisfy Section 71113's requirements ("Non-Qualifying Members"),[1] and that if it is read to apply to these Members, it is unconstitutionally vague and violates Planned Parenthood Federation and these Members' First Amendment and Due Process rights.

Now before the court is Plaintiffs' <u>Emergency Motion for a Preliminary Injunction</u> [<u>Doc. No. 4</u>] seeking to preliminarily enjoin Defendants from enforcing Section 71113 against Planned Parenthood Members. Mot. [<u>Doc. No. 4</u>]. Defendants oppose the motion, asserting that "democratically elected components of the Federal Government collaborated to enact that provision consistent with their electoral mandates from the American people as to how they want their hard-earned taxpayer dollars spent." Defs.' Mem. 1 [<u>Doc. No. 53</u>]. In Defendants' view, "the law turns on <u>action</u>, not <u>advocacy</u>." <u>Id.</u> (emphasis in original).

Defendants' overview frames this inquiry: Is Section 71113 directed at entities solely because they provide elective abortions or also because of their advocacy? As explained below, Section 71113 burdens the exercise of Planned Parenthood Federation and its Members' First Amendment right of association and is thus subject to strict scrutiny review. Under that standard, Plaintiffs have demonstrated a substantial likelihood of success on Plaintiffs' First Amendment claim on behalf of those Members who do not provide elective abortions and on all Plaintiffs'

---

[1] The parties use this term in their briefing to describe Planned Parenthood Members that do not independently meet Section 71113's definition of "prohibited entity." <u>See</u> Pls.' Mem. 14 [<u>Doc. No. 5</u>]; Defs.' Mem. 6 [<u>Doc. No. 53</u>].

equal protection claim based on the burdening of their right of association, where the law's classifications are not sufficiently tailored to stop elective abortions rather than advocacy.

The court finds further that Planned Parenthood Federation, on its own behalf and on behalf of Non-Qualifying Members, including Planned Parenthood Utah, satisfy the remaining requirements to obtain a preliminary injunction.

Accordingly, Plaintiffs' Emergency Motion for Preliminary Injunction [Doc. No. 4] is GRANTED in part, as set forth below, and otherwise remains under advisement.

## I.    Factual Background

The factual record before the court at the preliminary injunction stage as to the counts addressed here is as follows:

### A.    *Medicaid*

Medicaid is a joint state-federal funding program for medical assistance established by Title XIX of the Social Security Amendments of 1965. See Social Security Amendments of 1965, Pub. L. No. 89-97, § 121, 79 Stat. 286, 343–44 (1965); see also Costello Decl. ¶ 2 [Doc. No. 53-1] ("Medicaid is a joint state/federal partnership"). "Congress created Medicaid in 1965 to subsidize state efforts to provide healthcare to families and individuals 'whose income and resources are insufficient to meet the costs of necessary medical services.'" Medina v. Planned Parenthood South Atlantic, 606 U.S. __, 145 S. Ct. 2219, 2226 (2025) (quoting Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320, 323 (2015) (quoting 42 U.S.C. § 1396-1)). States are not required to participate in Medicaid, but all states and the District of Columbia currently participate. Brindis Decl. ¶ 15 [Doc. No. 5-5].

Medicaid is the largest source of health coverage in the United States. Id. ¶ 14. Medicaid is administered at the State level, but the majority of Medicaid funding is provided by the federal government in every state. Custer Decl. ¶ 41 [Doc. No. 5-1]; Brindis Decl. ¶ 15 [Doc. No. 5-5];

see also Medina, 145 S. Ct. at 2226 ("Historically, the federal government has provided on average about 57% of the funds required to implement Medicaid, and States have supplied the balance.") (citing Congressional Research Service, Medicaid: An Overview 21 (2025)).

Under Title XIX, Congress has authorized annual appropriations for each fiscal year in "a sum sufficient" to carry out the purposes of the program, which "shall be used" for making payments to participating States. 42 U.S.C. § 1396-1. Medicaid is categorized as "mandatory spending" or "direct spending." Medicaid Financing and Expenditures, https://www.congress.gov/crs-product/R42640 (last accessed July 21, 2025). For the fiscal year ending September 30, 2025, Congress has appropriated $406,956,850,000 for grants to State Medicaid programs. Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4 § 1101(a)(8), (c), 139 Stat. 9, 10–11 (Mar. 15, 2025) (appropriating amount provided in Further Consolidated Appropriations Act, Pub. L. No. 118-47, 138 Stat. 662 (2024)). Congress has appropriated an additional $261,063,820,000 for Medicaid for the first quarter of fiscal year 2026. Id. § 1109(b).

Each state that chooses to participate in Medicaid must submit a plan to the Secretary of Health and Human Services ("HHS") for approval. See 42 U.S.C. § 1396a(a), (b). The Secretary exercises authority to administer the Medicaid program through the Centers for Medicare and Medicaid Services ("CMS"). If a State's plan is approved, the State is entitled to Medicaid funds from the federal government for a percentage of the money it spends in providing covered medical care to eligible individuals. 42 U.S.C. § 1396b(a)(1); see also Arkansas Dep't of Health & Hum. Servs. v. Ahlborn, 547 U.S. 268, 275 (2006) (describing the Medicaid program). Federal law requires participating States to cover certain groups of individuals. See Medicaid, List of Medicaid Eligibility Groups, Mandatory Categorically Needy,

https://www.medicaid.gov/medicaid/eligibility/downloads/list-of-eligibility-groups.pdf (last visited July 21, 2025). If a patient is entitled to receive benefits under the program's criteria, that patient may enroll and receive health care services from Medicaid providers. Brindis Decl. ¶ 18 [Doc. No. 5-5].

Medicaid generally works through reimbursement; the program reimburses healthcare providers for covered services that they have delivered to patients. Costello Decl. ¶ 19 [Doc. No. 53-1]. CMS does not directly pay Medicaid providers. Id. ¶ 7. Instead, Medicaid provider payment occurs at the state level. Id. CMS issues advanced funding for State Medicaid programs through initial grant awards to States at the beginning of each quarter based on CMS-reviewed state expenditure estimates. Id. ¶ 3. Once CMS approves the advanced funding request, the State can draw down the federal advance for the allotted amount as costs are incurred. Id. ¶ 4 (citing 42 C.F.R. § 430.30(d)(3)). Every quarter, initial awards are reconciled to actual state expenditures following a finalization process that includes quarterly CMS reviews of state-submitted, actual expenditures and state draw-downs. Id. ¶ 5.

Congress has long prohibited the use of any federal funds to reimburse the cost of abortions under the Medicaid program except in limited circumstances. See Harris v. McRae, 448 U.S. 297, 302–03 (1980). At the same time, family planning services and supplies are a mandatory Medicaid benefit in accordance with Section 1905(a)(4)(C) of the Social Security Act. Costello Decl. ¶ 8 [Doc. No. 53-1].

B. *Plaintiffs' Organization, Mission, and Services*

1. Planned Parenthood Federation

Plaintiff Planned Parenthood Federation is a not-for-profit corporation organized under the laws of New York. Custer Decl. ¶ 7 [Doc. No. 5-1]. It is a national membership organization

with 47 Members (the "Planned Parenthood Members"), including Planned Parenthood Massachusetts and Planned Parenthood Utah. Id. Planned Parenthood Federation is not itself a healthcare provider and does not participate in Medicaid, but it supports its 47 Members, who do provide healthcare and receive Medicaid funding. Id. ¶¶ 7–8.

Planned Parenthood Federation administers accreditation standards for Planned Parenthood Members, promulgates shared medical standards and guidelines, and leads certain shared policy and program initiatives. Id. ¶ 13. Planned Parenthood Federation provides support, leadership, and guidance to Planned Parenthood Members. Id.

    2.   Planned Parenthood Members

Each Planned Parenthood Member is an independent non-profit organization that is incorporated and governed separately from other Members. Custer Decl. ¶ 9 [Doc. No. 5-1]; Lee Decl. ¶ 10 [Doc. No. 5-2] (Planned Parenthood Massachusetts); Ghorbani Decl. ¶¶ 1, 8–9 [Doc. No. 5-3] (Planned Parenthood Utah). Each Member has its own CEO, governance structure, staff, books, and operations. Custer Decl. ¶ 9 [Doc. No. 5-1]; Lee Decl. ¶ 10 [Doc. No. 5-2]; Ghorbani Decl. ¶ 9 [Doc. No. 5-3].

Planned Parenthood Members must agree to meet membership standards, which are outlined in Planned Parenthood Federation's bylaws and set by the Planned Parenthood Members. Custer Decl. ¶ 11 [Doc. No. 5-1]. Planned Parenthood Members elect Planned Parenthood Federation's board of directors, approve changes to Planned Parenthood Federation's bylaws and membership standards, approve Planned Parenthood Federation's long-range goals, and determine the amount each Planned Parenthood Member pays in annual dues to Planned Parenthood Federation. Id. ¶ 10.

6

Planned Parenthood Members provide medical services through nearly 600 health centers in 47 states and the District of Columbia and have a telehealth presence in all 50 states. Id. ¶¶ 7, 21. Each Planned Parenthood Member provides healthcare and education services in a distinct geographic area. Id. ¶ 9.

Collectively, Planned Parenthood Members provide sexual and reproductive healthcare to more people in the United States than any other provider. Id. ¶ 21. An estimated one out of every three women and one in ten men nationally has received care from a Planned Parenthood Member at least once in their lifetime, and this number is even higher among individuals with Medicaid, 43% of whom have received services from a Member health center. Id. In federal fiscal year 2023, Members served more than 2 million patients and provided approximately 9.4 million services. Id. ¶ 23.

Planned Parenthood Members offer various services depending on the needs of their communities. Id. ¶ 22. However, typical services include providing contraception (including long-acting reversible contraceptives), contraceptive counseling, physical exams, cancer screening, hormone therapy, testing and treatment for sexually transmitted infections ("STIs"), pregnancy testing and counseling, vasectomies, and colposcopies. Id. Members also provide abortion where it is legal. Id. Abortions comprise approximately 4% of Planned Parenthood Members' services nationwide. Id. ¶ 23.

Planned Parenthood Massachusetts provides services including contraception, cervical screenings, breast cancer exams, and STI tests. Lee Decl. ¶¶ 30–31 [Doc. No. 5-2]. Planned Parenthood Massachusetts provides abortion services to patients who choose to terminate a pregnancy, but no federal funds under the Medicaid program are used to reimburse Planned Parenthood Massachusetts for the cost of providing those services (except under the limited

circumstances permitted by federal law). Id. ¶ 26. Planned Parenthood Utah provides for

contraception, cervical screenings, breast cancer exams, testicular cancer screening, STI tests,

pregnancy testing, and abortions. Ghorbani Decl. ¶ 11 [Doc. No. 5-3]. No federal funds are used

to reimburse abortion services (except under the limited circumstances permitted by federal law).

Custer Decl. ¶ 45 [Doc. No. 5-1]. The remaining Planned Parenthood Members similarly receive

no reimbursement for abortions from Medicaid funds or other federal funds except in permitted

circumstances. Id. ¶ 45; Lee Decl. ¶ 26 [Doc. No. 5-2].

     Planned Parenthood Members participate in Medicaid programs for services other than

elective abortions in every state where they are able. Custer Decl. ¶ 43 [Doc. No. 5-1]. Planned

Parenthood Massachusetts received $4,744,699.47 in Medicaid reimbursements during fiscal

year 2023. Lee Decl. ¶ 29 [Doc. No. 5-2]. Medicaid reimbursements accounted for more than

one third of Planned Parenthood Members' aggregate revenue in fiscal year 2023. Custer Decl.

¶ 44 [Doc. No. 5-1]. Some individual Members received over three quarters of their health

services revenue from Medicaid reimbursement that year. Id. Approximately 51% of Planned

Parenthood Members' patients rely on Medicaid for their healthcare, and half of visits to Planned

Parenthood Member health centers are covered by Medicaid. Id. ¶ 43.

     Planned Parenthood Massachusetts provided services to approximately 10,822 patients

enrolled in Medicaid in 2024. Lee Decl. ¶¶ 30–31 [Doc. No. 5-2]. Planned Parenthood Utah

provided service to approximately 2,096 patients enrolled in Medicaid in 2024. Ghorbani Decl.

¶ 24.

     Some Planned Parenthood Members, including Planned Parenthood Utah and Planned

Parenthood of Delaware, received less than $800,000 in Medicaid reimbursements during federal

fiscal year 2023. Custer Decl. ¶¶ 63–64 [Doc. No. 5-1]; Ghorbani Decl. ¶ 20 [Doc. No. 5-3]; see

also id. ¶ 24 (Planned Parenthood Utah received $706,251.02 in Medicaid reimbursements during fiscal year 2023).

Three Planned Parenthood Members—Gulf Coast, Planned Parenthood Greater Texas, and Planned Parenthood of Tennessee and North Mississippi—do not provide abortions because abortion is not legal in any state where their health centers are located. Custer Decl. ¶ 63 [Doc. No. 5-1].

3. Plaintiffs' Mission and Advocacy

Planned Parenthood Federation's mission is to ensure that people receive high-quality, inclusive, and comprehensive sexual and reproductive healthcare regardless of income, insurance, gender identity, sexual orientation, or race; to provide related educational services; to promote research on sexual and reproductive health; and to advocate for public policies that guarantee access to such services. Custer Decl. ¶¶ 7, 12 [Doc. No. 5-1]. Planned Parenthood Members share Planned Parenthood Federation's mission. Id. ¶ 12. Planned Parenthood Federation membership is important to Planned Parenthood Members' ability to fulfill their missions. Id. ¶ 15. Planned Parenthood Federation licenses the use of the Planned Parenthood name to each Planned Parenthood Member, and the Planned Parenthood name sends a message to the community that the Planned Parenthood Member stands for certain values and provides healthcare and educational services in furtherance of the shared Planned Parenthood mission. Id. ¶¶ 14–15. Working in furtherance of that mission, Planned Parenthood Members advocate for equitable access to the sexual and reproductive healthcare, including abortion, that Members and other non-profit sexual and reproductive healthcare providers offer. Id. ¶ 19.

Planned Parenthood Federation and Planned Parenthood Members advocate at the federal, state, and local levels to protect and expand access to reproductive healthcare services

and information. Id. ¶ 75. Planned Parenthood Federation has advocated before Congress to codify the rights to abortion and contraception, block abortion bans, and repeal federal law that prohibits federal funding of abortion. Id. Planned Parenthood Federation has also advocated for access to emergency contraception and medication abortion. Id. Planned Parenthood Members, and sometimes Planned Parenthood Federation, have litigated to secure abortion access and rights for their patients in federal and state courts. Id.

Planned Parenthood Action Fund, a related 501(c)(4) organization, advocates for policies that protect care for Planned Parenthood Members' patients and publishes a "congressional scorecard" to communicate with the public regarding their lawmakers' records and to activate constituents. Id. Additionally, Planned Parenthood Action Fund has supported campaigns for ballot initiatives. Id. Separately, Planned Parenthood Action Fund works with other national and local advocacy and political organizations to elect federal, state, and local officials who will support reproductive freedom. Id. Each Planned Parenthood Member may also have a related 501(c)(4) tax-exempt entity that works in furtherance of the Planned Parenthood mission through education, advocacy, and limited electoral activities. Id. ¶ 19.

C. *Section 71113*

Section 71113(a) of the Reconciliation Act provides that "no Federal funds that are considered direct spending[2] and provided to carry out a State plan under title XIX of the Social Security Act or a waiver of such a plan shall be used to make payments to a prohibited entity for items and services furnished during the 1-year period beginning on the date of the enactment of

---

[2] "Direct Spending" is defined with reference to 2 U.S.C. § 900(c)(8), which states that "[t]he term 'direct spending' means (A) budget authority provided by law other than appropriation Acts; (B) entitlement authority; and (C) the Supplemental Nutrition Assistance Program." Id. § 71113(b)(2)

this Act . . . ." Pub. L. No. 119-21, § 71113(a), <u>139 Stat. 72</u>, <u>300-01</u> (July 4, 2025). Section

71113(b)(1) defines the term "prohibited entity" as:

> an entity, <u>including its affiliates</u>, subsidiaries, successors, and clinics--
>
> (A) that, as of the first day of the first quarter beginning after the date of enactment of this Act-
>
> > (i) is an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code;
> >
> > (ii) is an essential community provider described in section 156.235 of title 45, Code of Federal Regulations (as in effect on the date of enactment of this Act), that is primarily engaged in family planning services, reproductive health, and related medical care; and
> >
> > (iii) provides for abortions, other than an abortion-
> >
> > > (I) if the pregnancy is the result of an act of rape or incest; or
> > >
> > > (II) in the case where a woman suffers from a physical disorder, physical injury, or physical illness, including a life-endangering physical condition caused by or arising from the pregnancy itself, that would, as certified by a physician, place the woman in danger of death unless an abortion is performed; and
>
> (B) for which the total amount of Federal and State expenditures under the Medicaid program under title XIX of the Social Security Act for medical assistance furnished in fiscal year 2023 made directly, or by a covered organization, to the entity <u>or to any affiliates</u>, subsidiaries, successors, or clinics of the entity, or made to the entity or to any affiliates, subsidiaries, successors, or clinics of the entity as part of a nationwide health care provider network, exceeded $800,000.

<u>Id.</u> § 71113(b)(1) (emphasis added).

Section 71113(c) also provides for $1,000,000 in appropriations to the Administrator of

CMS for implementation. <u>Id.</u> § 71113(c).

D.  *Prohibited and Non-Qualifying Entities Under Section 71113*

Planned Parenthood Members are non-profit entities and essential community providers

who primarily engage in family planning services, reproductive health, and related medical care.

<u>See</u> Lee Decl. ¶ 8 [<u>Doc. No. 5-2</u>]; Ghorbani Decl. ¶ 8 [<u>Doc. No. 5-3</u>]; Tosh Decl. ¶ 16 [<u>Doc. No.</u>

5-4]. Many Planned Parenthood Members, including Plaintiff Planned Parenthood Massachusetts, also provide abortion services and received more than $800,000 in Medicaid reimbursements for non-abortion services in fiscal year 2023, and are thus "prohibited entities" under Section 71113. See Custer Decl. ¶ 47 [Doc. No. 5-1]; Lee Decl. ¶ 29 [Doc. No. 5-2]. The Center for Medicaid and CHIP Services ("CMCS") has "identified at least two non-Planned Parenthood entities" that have provided for elective abortions and otherwise meet the definition of "prohibited entity." Snyder Decl. ¶ 6 [Doc. No. 53-2].

Other types of providers, including community health centers ("CHCs") and federally qualified health centers ("FQHCs"), also use Medicaid programs to provide healthcare services to patients. Brindis Decl. ¶ 20 [Doc. No. 5-5]. However, unlike Planned Parenthood Members, CHCs and FQHCs usually do not specialize in family planning, instead providing services such as primary care, dental care, and/or mental health care. Id. Accordingly, even if they do perform elective abortions, Section 71113 does not prohibit them from receiving Medicaid reimbursements for other services.

Ten Planned Parenthood Members (the "Non-Qualifying Members") either do not offer abortion services or did not receive $800,000 in Medicaid reimbursement. Defendants contend that "CMS . . . has had no opportunity to analyze the legal and factual questions that it must consider to construe and apply the statute[,]" and has given no "concrete indication that the Government will conclude that the 'non-qualifying members' are covered by Section 71113[.]" Defs.' Mem. 24 [Doc. No. 53]. Defendants contend alternatively that "HHS and CMS could— depending on facts which have yet to be developed—permissibly construe the statute to cover 'non-qualifying members' if, on October 1, they are 'affiliates' of members that provide for abortions." Id. at 27.

E.  *Section 71113's Harm to Members and Patients*

If Planned Parenthood Members are barred from receiving federal Medicaid reimbursement for their non-abortion services, Planned Parenthood Members across the country anticipate reducing the hours and programs they offer, terminating staff members, and eventually closing health centers. See Custer Decl. ¶¶ 4, 54–57 [Doc. No. 5-1]; Lee Decl. ¶¶ 40–42 [Doc. No. 5-2]; Ghorbani Decl. ¶¶ 6, 24 [Doc. No. 5-3]; Tosh Decl. ¶¶ 45–48 [Doc. No. 5-4]. Health centers that close may never reopen. Id. ¶¶ 45–48.

A contraction in services causes a corresponding disruption to patient healthcare. See Custer Decl. ¶ 54 [Doc. No. 5-1]. Section 71113 creates an immediate disruption for over one million family planning patients who previously received care at Member health centers. Brindis Decl. ¶ 35 [Doc. No. 5-5]. The law "is already . . . forcing some Members to turn away patients enrolled in Medicaid; to attempt to refer them to other providers; or to offer Medicaid patients (who, by criteria of the program, have low incomes) the option to pay out-of-pocket for services where state law allows." Custer Decl. ¶ 49 [Doc. No. 5-1].

Planned Parenthood Massachusetts had nearly 150 scheduled appointments for Medicaid patients at their health centers on July 7 and July 8, and began informing those patients when Section 71113 was enacted that they could not use their Medicaid coverage for services at Planned Parenthood Massachusetts healthcare centers. Lee Decl. ¶ 4 [Doc. No. 5-2]. Many of those patients cannot afford to pay for care and cannot get timely care at another provider that accepts Medicaid. Id.

The law also disrupts healthcare for patients who do not rely on Medicaid. Custer Decl. ¶ 54 [Doc. No. 5-1]. Patients who can still access care at Member health centers could experience delays in receiving care. Id. ¶¶ 51, 54. Patients who seek healthcare elsewhere could

also face delays at those facilities, id. ¶ 56, and alternative providers may not be able to ramp up services quickly enough to fill the gap, Brindis Decl. ¶¶ 36–39 [Doc. No. 5-5]. Further, many Member health centers are located in medically underserved areas, primary care health professional shortage areas, and rural areas. Custer Decl. ¶ 55 [Doc. No. 5-1]. In many cases, patients who receive care at Planned Parenthood Member health centers will have no feasible alternative reproductive healthcare provider in their communities because of provider scarcity, language issues, unavailable services, or caps on Medicaid patients. Id. ¶¶ 24–29, 53–56; Lee Decl. ¶¶ 36–38 [Doc. No. 5-2]; Tosh Decl. ¶¶ 51–52, 54 [Doc. No. 5-4].

Patients are likely to suffer adverse health consequences where care is disrupted or unavailable. In particular, restricting Members' ability to provide healthcare services threatens an increase in unintended pregnancies and attendant complications because of reduced access to effective contraceptives, and an increase in undiagnosed and untreated STIs. Brindis Decl. ¶¶ 11, 58, 62–66 [Doc. No. 5-5]. Moreover, decreased access to contraceptives and the corresponding increase in the number of unintended pregnancies caused by excluding Planned Parenthood Members from Medicaid will likely result in an increased number of abortions. Id. ¶ 71. Restricting access to Member healthcare clinics will negatively affect more than just reproductive health; Members often serve as a source of primary care for patients. Id. ¶ 82. Planned Parenthood Federation reported in its most recent annual reort that its Members provided 426,268 cancer screenings and other diagnostic procedures. Id. ¶ 84. Reduced access to screening services creates a likelihood that health issues will go undetected with attendant serious consequences. Id. ¶ 74.

## II.    Standard of Review

The issuance of a preliminary injunction before a trial on the merits can be held is an "extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to

such relief. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." Starbucks Corp. v. McKinney, 602 U.S. 339, 346 (2024) (quoting Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981)). In evaluating a motion for a preliminary injunction, the court considers four factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movants] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)). The balancing of hardships and the analysis of the public interest merge when, as here, the government is the opposing party. Does 1–6 v. Mills, 16 F.4th 20, 37 (1st Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)).

The first factor is the most important: if the moving party cannot demonstrate a likelihood of success on the merits, "the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)). "To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (quoting Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010)).

### III.    Discussion

A. *Likelihood of Success on the Merits*

    1.   First Amendment Rights of Members That Do Not Provide Abortions

Plaintiffs argue that if Section 71113 covers Planned Parenthood Members that do not provide abortions, the law imposes an unconstitutional condition on those Members and Planned Parenthood Federation's First Amendment right of association. Pls.' Mem. 35 [Doc. No. 5].[3] Defendants argue that Section 71113 merely "withholds funding based on whether entities provide abortion services," that Plaintiffs' arguments concerning "affiliates" are not ripe, and that "the word 'affiliate' here has nothing to do with expressive association." Defs.' Mem. 30, 33 [Doc. No. 53].

Planned Parenthood Federation and each Planned Parenthood Member are entitled to First Amendment protections. See Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 355 (2010) (invalidating law on First Amendment grounds where "[t]he purpose and effect of [the] law is to prevent corporations, including . . . nonprofit corporations, from presenting both facts and opinions to the public"). "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., 570 U.S. 205, 213 (2013) (quoting Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 641 (1994)). The Supreme Court has "long understood as implicit in the right to engage in activities protected

---

[3] Plaintiffs also claim that if Section 71113 covers Planned Parenthood Members who perform abortions but received less than $800,000 from Medicaid in fiscal year 2023, the law imposes an unconstitutional condition on these Members and Planned Parenthood Federation's right of association. Id. The court addresses this argument in connection with Plaintiffs' equal protection claim.

by the First Amendment a corresponding right to associate with others" in pursuit of desired political, educational, or social ends. Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984).

At the same time, the Constitution provides Congress exclusive power "[t]o lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. const. art. I, § 8, cl. 1. This provision gives Congress broad discretion to spend for the "general [w]elfare." All. for Open Soc'y, 570 U.S. at 213. Congress may exercise this power by funding particular programs or activities, and it has "authority to impose limits on the use of such funds to ensure they are used in the manner Congress intends." Id. "The Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way." Rust v. Sullivan, 500 U.S. 173, 193 (1991). Generally, a party is limited to declining federal funds where it objects to a condition Congress places on receipt of those funds, even where that condition affects the recipient's First Amendment rights. All. for Open Soc'y, 570 U.S. at 214.

However, "the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 606 (2013). The government

> may not deny a benefit . . . on a basis that infringes [a recipient's] constitutionally protected interests—especially, [the recipient's] interest in freedom of speech. For if the government could deny a benefit to a [recipient] because of . . . constitutionally protected speech or associations, [the recipient's] exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which (it) could not command directly."

Perry v. Sindermann, 408 U.S. 593, 597 (1972) (last alteration in original) (quoting Speiser v. Randall, 357 U.S. 513, 526 (1958)). The unconstitutional conditions doctrine bars the government from denying a benefit "on a basis that infringes [the recipient's] constitutionally

protected . . . freedom of speech even if [the recipient] has no entitlement to that benefit."

Rumsfeld v. F. for Acad. & Institutional Rts., Inc., 547 U.S. 47, 59 (2006) (quoting United States

v. American Library Ass'n., Inc., 539 U.S. 194, 210 (2003)). Permissible conditions on funding

"specify the activities Congress wants to subsidize[,]" while unconstitutional conditions "seek to

leverage funding to regulate speech outside the contours of the [funded] program itself." All. for

Open Soc'y, 570 U.S. at 214–15.

Contrary to Defendants' assertion, Section 71113 does not merely "withhold[] funding

based on whether entities provide abortion services," but also based on whether "an entity,

including its affiliates," provides abortion services.[4] Pub. L. No. 119-21, § 71113(b)(1), 139 Stat.

72, 300 (July 4, 2025) (emphasis added). And Defendants assert that "two entities' existence

under common control" would satisfy the dictionary definition of an "affiliate," and that, in

Defendants' view, Planned Parenthood Federations' "membership standards," "accreditation

standards," and "shared medical standards and guidelines," would be sufficient to show common

control such that Planned Parenthood Members who do not provide abortion could be "affiliates"

of the Planned Parenthood Members who do. See Defs.' Mem. 28 [Doc. No. 53].

---

[4] Defendants' assertion that Plaintiffs' arguments concerning the law's application to "affiliates" are not ripe fails where, without injunctive relief, Planned Parenthood Members who do not provide abortion services will need to decide whether to disaffiliate from other Planned Parenthood Members before October 1, 2025, or risk ineligibility for Medicaid reimbursements because of their continuing membership in Planned Parenthood Federation. Therefore, even accepting Defendants' contention that there is uncertainty regarding how Defendants will apply Section 71113 to "affiliates," this uncertainty has an immediate chilling effect on Members' right of association. Given this chilling effect, and in light of Defendants' ultimate contention that "HHS and CMS could permissibly conclude (. . . depending on the facts as of October 1) that [Planned Parenthood Federation] members are all 'affiliates' within the meaning of the statute," id. at 29, Plaintiffs' unconstitutional conditions claim is ripe. See Franklin California Tax-Free Tr. v. Puerto Rico, 805 F.3d 322, 333 n.16 (1st Cir. 2015) (concluding case ripe where "plaintiffs allege that the very enactment of the [statute], rather than the manner of enforcement" impaired plaintiffs' rights") (emphasis in original).

To the extent that Section 71113 may be applied to Planned Parenthood Members who do not provide abortion, Plaintiffs are likely to succeed in establishing that the law impermissibly conditions the receipt of Medicaid funding on these Members foregoing their right to associate with Planned Parenthood Federation and other Members. Members who do not provide abortions cannot escape the law's burden except by disassociating from Members that do. And because Section 71113 may be applied to Members who are affiliates of each other via the structure, governance, and membership requirements of Planned Parenthood Federation, disassociating with other Members requires disassociating from Planned Parenthood Federation itself.

While Defendants contend that Section 71113 does not regulate speech, the record demonstrates that Members' affiliation via their membership in Planned Parenthood Federation is expressive. Planned Parenthood Federation advocates before Congress, provides education and information about sexual and reproductive health, and through Planned Parenthood Action Fund, communicates with the public regarding lawmakers' voting records, supports campaigns for ballot initiatives, and supports candidates for federal, state, and local officials who will support reproductive freedom in furtherance of its mission. Custer Decl. ¶¶ 38, 75 [Doc. No. 5-1]. Members engage in those activities with Planned Parenthood Federation and each other. Id. ¶ 75. Additionally, Planned Parenthood Federation provides leadership and financial support to Members around shared policy and program initiatives. Id. ¶¶ 13, 75. Moreover, each Member licenses the use of the Planned Parenthood name, which expresses that each Member stands for particular values. Id. ¶¶ 14–15. Membership in Planned Parenthood Federation—and corresponding affiliation with other Members—is thus part and parcel with Planned Parenthood Members' associational expression.

The association between Members and with Planned Parenthood Federation is protected expression that is "outside the contours" of the Medicaid program. All. for Open Soc'y, 570 U.S. at 214–15. The "government is not required to subsidize activities that it does not wish to promote." Matal v. Tam, 582 U.S. 218, 240 (2017) (citing 570 U.S. at 215). Congress may set conditions "that define the limits" of a spending program by "specify[ing] the activities Congress wants to subsidize," but Congress may not set "conditions that seek to leverage funding to regulate speech outside the contours of the program itself." 570 U.S. at 214–15. Here, Medicaid funds healthcare services for qualifying low-income patients. Section 71113 places conditions on funds appropriated for Medicaid, including that a Medicaid provider may not affiliate with a "prohibited entity," which by definition provides abortions. But conditioning Medicaid funding on affiliation is not a limit on the services that Medicaid funds may reimburse.

Rust v. Sullivan provides an illustrative distinction. There, Congress barred project funds from funding particular conduct: abortion-related speech. 500 U.S. at 196. The regulations at issue allowed funded entities to engage in abortion-related speech so long as it was not funded with project monies. Id. In upholding Congress's limitation on funding, the Supreme Court emphasized that "'unconstitutional conditions' cases involve situations in which the Government has placed a condition on the recipient of the subsidy rather than on the program or service," which "effectively prohibit[s] the recipient from engaging in the protected conduct outside the scope of the federally funded program." Id. at 197. That is what the government has done here. Congress has refused to fund particular recipients: affiliates of entities that provide abortion. Therefore, Members that do not provide abortion must disassociate from Planned Parenthood Federation to disaffiliate from Members that provide abortion to remain eligible for Medicaid funds. This requirement is unrelated to the scope of healthcare services that a Member provides.

The Supreme Court has underscored that the use of separate corporate entities, even where closely related, allows Congress to set conditions with its spending powers without unconstitutionally leveraging the funding to regulate speech. In Regan v. Taxation With Representation of Wash., 461 U.S. 540 (1983), the Court upheld a prohibition on "substantial lobbying activities" by 501(c)(3) organizations against an unconstitutional conditions challenge in part because the organization remained free to use a "dual structure . . . , with a § 501(c)(3) organization for non-lobbying activities and a § 501(c)(4) organization for lobbying," meaning the prohibition did not necessarily inhibit the organization's ability to engage in First Amendment activities. Id. at 544–45. In F.C.C. v. League of Women Voters of Cal., 468 U.S. 364 (1984), the Court struck down a statute barring any recipient of certain federal grants from engaging in editorializing. Id. at 400. In so holding, the Court explained that "if Congress were to adopt a revised version" of the statute "that permitted . . . broadcasting stations to establish 'affiliate' organizations" that engaged in editorializing, "such a statutory mechanism would plainly be valid" because "[a] public broadcasting station[] would be free . . . to make known its views on matters of public importance through its nonfederally funded, editorializing affiliate without losing federal grants for its noneditorializing broadcast activities." Id.

Here, Section 71113 prohibits the type of dual structure that would have insulated the abortion restriction from an unconstitutional conditions challenge. Instead of merely prohibiting Planned Parenthood Members that receive Medicaid funds from providing abortions, the statute prohibits them from affiliating with entities that do. Moreover, the record is devoid of evidentiary support for Defendants' suggestion that Planned Parenthood entities share funds that are ultimately used for abortions. See Defs.' Mem. 35 [Doc. No. 53]. Therefore, restricting funds

21

based on affiliation with an abortion provider operates only to restrict the associational right of Members that do not provide abortion.

Defendants also rely on Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW, 485 U.S. 360 (1988), where the Supreme Court found denying food stamps to households of striking workers did not violate the associational rights of household members or striking workers. Id. at 366. The Court there explained that a legislature's decision "not to subsidize the exercise of a fundamental right does not infringe the right." Id. at 368 (citing Regan, 461 U.S. at 549 (1983)). But the Court also acknowledged that associational rights "can be abridged even by government actions that do not directly restrict" the "ability to associate freely," and that the right to associate is "protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference." Id. at 367 n.5 (citations omitted).

Further, in Lyng, the law denied eligibility for food stamps only while a household member was on strike. Id. at 362. And in upholding the law, the court explained:

> Exposing the members of an association to . . . economic reprisals . . . merely because of their membership in that group poses a much greater danger to the exercise of associational freedoms than does the withdrawal of a government benefit based not on membership in an organization but merely for the duration of one activity that may be undertaken by that organization.

Id. at 367 n.5. Here, Section 71113 withholds Medicaid reimbursements from Planned Parenthood Members who do not provide abortion so long as any other Member continues to do so. Where Section 71113 imposes a funding restriction based on the activity of other Members, the law burdens membership in Planned Parenthood Federation rather than a particular activity in which a Member engages. And the government may not burden a Member's associational right as a means of limiting other Members' undesired conduct. See NAACP v. Claiborne Hardware Co., 458 U.S. 886, 908 (1982) ("[T]he right to associate does not lose all constitutional

protection merely because some members of the group may have participated in conduct . . . that itself is not protected.").

In sum, where Section 71113 disqualifies Planned Parenthood Members who do not provide abortion because of their affiliation with other Members who will continue to provide abortion, and where membership in Planned Parenthood Federation is expressive, Plaintiffs are likely to succeed in establishing that Section 71113 unconstitutionally conditions Medicaid funding on these Members foregoing their First Amendment right of association.

2.  Equal Protection

Plaintiffs assert that Section 71113 violates the Fifth Amendment's equal protection guarantee by barring Planned Parenthood Members from receiving Medicaid funding while "leaving virtually all other abortion providers outside its scope." Pls.' Reply 1 [Doc. No. 60]. Plaintiffs argue that Section 71113 is subject to strict scrutiny because it treats Planned Parenthood Members differently than other similarly-situated entities because of their association with Planned Parenthood Federation and each other. Pls.' Mem. 24–25 [Doc. No. 5]. And Plaintiffs argue that the law fails strict scrutiny because it applies based on a combination of conjunctive criteria that almost exclusively affect Planned Parenthood Members, Pls.' Reply 1 [Doc. No. 60], and are unrelated to the goal of reducing abortions. Pls.' Mem. 25 [Doc. No. 5]. Defendants respond that rational basis review applies and that the law effectuates a congressional desire "to reduce abortion and government subsidization of abortions." Defs.' Mem. 23 [Doc. No. 53].

a.  Framework

"[T]he Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws." Vance v. Bradley, 440 U.S. 93, 94 n.1 (1979) (collecting

cases). Equal protection claims under the Fifth Amendment are subject to the same analysis as 14th Amendment equal protection claims. Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n.2 (1975).

Equal protection directs "that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see also Walker v. Exeter Region Co-op. Sch. Dist., 284 F.3d 42, 44 n.2 (1st Cir. 2002) ("[T]he equal protection guaranteed by the Constitution forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens and liabilities which are not cast upon others similarly situated.") (quoting Atchison, Topeka & Santa Fe R.R. Co. v. Matthews, 174 U.S. 96, 104 (1899)). Entities are similarly situated where "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001) (citation omitted).

"The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." Plyler v. Doe, 457 U.S. 202, 216 (1982) (quoting Tigner v. Texas, 310 U.S. 141, 147 (1940)). And a legislature "ha[s] substantial latitude to establish classifications that roughly approximate the nature of the problem perceived[.]" Id. Accordingly, legislative classifications are generally permissible so long as "the classification at issue bears some fair relationship to a legitimate public purpose." Id. "[A] statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). "[C]lassifications that . . . impinge upon the exercise of a 'fundamental right'" are "presumptively invidious." Plyler, 457 U.S. at 216–17. Impingement of these fundamental

rights, including "free speech rights, are subject to strict scrutiny and will only be upheld if

'precisely tailored to serve a compelling governmental interest.'" <u>Rocket Learning, Inc. v.

Rivera-Sanchez</u>, <u>715 F.3d 1, 9</u> n.6 (1st Ci<u>r. 2013</u>) (quoting <u>Plyler</u>, <u>457 U.S. at 217</u>). In such

cases, the government bears the burden to demonstrate "that its classification has been precisely

tailored to serve a compelling governmental interest." <u>Plyler</u>, <u>457 U.S. at 216</u>–17.

        b.  Discussion

    Section 71113 bars a narrow class of healthcare providers from receiving Medicaid

funding. As relevant here, Section 71113 denies Medicaid funds to non-profit health care

providers that are "essential community provider[s] . . . primarily engaged in family planning

services, reproductive health, and related medical care"[5] and provide abortion. <u>See</u> Pub. L. No.

119-21, § 71113(b)(1)(A), <u>139 Stat. 72</u>, <u>300</u> (July 4, 2025). Additionally, a Planned Parenthood

Member that provides abortion services but did not exceed $800,000 in Medicaid funding in

fiscal year 2023 may be precluded from receiving Medicaid funding as an "affiliate" of another

Member that provides abortion services that meets the funding threshold.

    These conjunctive criteria capture a small subset of abortion providers while leaving

many others untouched. For-profit abortion providers may still receive Medicaid reimbursements

for covered non-abortion services. Entities that provide abortions but are not "essential

community providers" because they do not primarily serve predominantly low-income,

---

[5] As defined by <u>45 C.F.R. § 156.235(c)</u>,

> [a]n essential community provider is a provider that serves predominantly low-
> income, medically underserved individuals . . . ; or a State-owned family planning
> service site, or governmental family planning service site, or not-for-profit family
> planning service site that does not receive Federal funding under special
> programs, including under Title X of the PHS Act, or an Indian health care
> provider . . . .

medically underserved individuals may still engage in family planning services without losing Medicaid funding. Entities that provide abortions, are "essential community providers," but are not primarily engaged in family planning services, such as community health centers and federally qualified health centers, see Brindis Decl. ¶ 20 [Doc. No. 5-5], may also still receive Medicaid payments for their non-abortion services. And Section 71113 does not cover any abortion provider that did not receive more than $800,000 in Medicaid funding in fiscal year 2023 that is not an "affiliate" of an entity that meets the definition of "prohibited entity." On the record before the court, Section 71113 applies to 46 abortion providers: 37 Planned Parenthood Members that meet all of the "prohibited entity" criteria, 7 Planned Parenthood Members who provide abortion but received less than $800,000 in Medicaid reimbursements in fiscal year 2023 but may be considered "affiliated" with Planned Parenthood Members, see Custer Decl. ¶ 63 [Doc. No. 5-1], and two non-Planned Parenthood entities. See Snyder Decl. ¶ 6 [Doc. No. 53-2].

But where Section 71113 classifies on the basis of affiliation, it impinges on Planned Parenthood Federation's and each Members' right of association. Because Section 71113 applies to affiliates of an entity that provide abortion, no Member can escape the law's burden simply by ending its own abortion services. Instead, a Member must also disaffiliate from any Member that continues to provide abortion, which requires disassociating from Planned Parenthood Federation. As explained above, conditioning Medicaid funding on disassociating from Planned Parenthood Federation burdens the right of association. Because Section 71113 impinges on a fundamental right, it is subject to strict scrutiny. See Rocket Learning, 715 F.3d at 9 n.6.

Defendants argue first that this classification is constitutionally permissible because Congress is "free to decline to provide taxpayer funds to entities that provide abortions." Defs.' Mem. 21 [Doc. No. 53]; see also id. at 14 ("Congress may make a policy choice not to contract

with abortion providers even for covered medical care"). But Section 71113 is not "precisely tailored" toward denying taxpayer funds from abortion providers where Defendants do not dispute that the conjunctive criteria leave "virtually all abortion providers who participate in Medicaid—other than Planned Parenthood Members—unaffected" by the legislation. Pls.' Mem. 25 [Doc. No. 5] (emphasis in original).

Defendants argue further that Congress was free to focus on providers that are "primarily engaged in family planning services, reproductive health, and related medical care" because "they are likely to perform a higher proportion of abortions," and was free to distinguish between for-profit providers and non-profit providers because the non-profits already receive "an implicit government subsidy (in the form of tax-exempt status)[.]" Defs.' Mem. 22 [Doc. No. 53]. But Defendants do not explain how excluding providers of family planning services, reproductive healthcare, and related medical care that are not "essential community providers" because they do not serve predominantly low-income or medically underserved individuals relates to Congress's goal of reducing abortion. Nor do Defendants explain how denying funding from entities that already have "the benefit of a tax-exempt status" furthers that end.

Defendants also assert that Congress was free to address providers that specialize in family planning and received more than $800,000 in Medicaid funding in fiscal year 2023 because "[l]arger providers carry out more abortions and receive more government subsidies, so they are a natural first target." Id. at 22. But Defendants offer no basis for treating Planned Parenthood members who provide abortion but received less than $800,000 in Medicaid reimbursement, such as Planned Parenthood Utah, differently than other abortion providers who received less than $800,000 and are not Planned Parenthood Members. Congress sought to treat Planned Parenthood Federation and its Members as a single legal entity. See id. at 1 ("[T]he bill

27

stops federal subsidies for Big Abortion."). But the record before the court establishes each Planned Parenthood Member is an independent organization. See Custer Decl. ¶ 9 [Doc. No. 5-1]. Consequently, restricting funding for them on the basis of affiliation creates the First Amendment problem described above.

At bottom, Defendants seek to justify each of Section 71113's criteria in isolation, but offer no justification for the classification established by the criteria in conjunction. Defendants argue that this classification is constitutionally permissible because Congress is "free to decline to provide taxpayer funds to entities that provide abortions." Defs.' Mem. 21 [Doc. No. 53]; see also id. at 14 ("Congress may make a policy choice not to contract with abortion providers even for covered medical care."). But Section 71113 does more: It declines Medicaid funding on the basis of affiliation, and thus draws a classification that burdens a fundamental First Amendment right. Where Defendants have not shown the law is precisely tailored to serve a compelling governmental interest, Plaintiffs have demonstrated a substantial likelihood of success on their equal protection claim.

B. *Irreparable Harm to Planned Parenthood Federation and the Non-Qualifying Members*

"'Irreparable injury' in the preliminary injunction context means an injury that cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 76 (1st Cir. 2005). "[T]he measure of irreparable harm is not a rigid one; it has been referred to as a sliding scale, working in conjunction with a moving party's likelihood of success on the merits." Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009). Further, "[d]istrict courts have broad discretion to evaluate the irreparability of

alleged harm and to make determinations regarding the propriety of injunctive relief." Id. "[T]he issuance of a preliminary injunction requires a showing of irreparable harm to the movant rather than to one or more third parties." CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., 48 F.3d 618, 622 (1st Cir. 1995) (emphasis in original). Moreover, "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is likely in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (emphasis in original).

Plaintiffs correctly note, and Defendants do not contest, that injury to Planned Parenthood Federation's and Planned Parenthood Members' First Amendment rights constitutes irreparable harm to Plaintiffs sufficient to support the issuance of injunctive relief. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Mahmoud v. Taylor, 606 U.S. __, 2025 WL 1773627, at *24 (U.S. June 27, 2025) (quoting Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 19 (2020) (per curiam)); see also Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 15 (1st Cir. 2012) (explaining "[t]here is no need for an extensive analysis of" irreparable harm where "plaintiffs have made a strong showing of likelihood of success on the merits of their First Amendment claim.").

It is no answer that Planned Parenthood Federation and its Members remain "free . . . to collaborate for the purpose of advocacy." Id. at 33. As explained above, membership is expressive association. Where Section 71113 encourages Members to give up their membership to avoid affiliation with a "prohibited entity," it causes a First Amendment injury. See NAACP v. Claiborne Hardware Co., 458 U.S. 886, 908 (1982) ("Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association.") (quoting NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958)).

29

Where Section 71113 encourages Non-qualifying Planned Parenthood Members to disassociate from Planned Parenthood Federation, it also causes Planned Parenthood Federation to suffer First Amendment injury. A membership organization suffers injury from government action that has the effect of discouraging or reducing membership in that organization. Cf. NAACP, 357 U.S. at 459–60. Such action "is likely to affect adversely the ability of [the organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate, in that it may induce members to withdraw from the Association and dissuade others from joining it . . . ." Id. at 462–63. Section 71113 encourages Non-qualifying Members to give up their membership in Planned Parenthood Federation to avoid losing Medicaid funding on the basis of affiliation. Discouraging membership in Planned Parenthood Federation impairs its ability to engage in advocacy, particularly where Members not only pay dues, but participate in advocacy alongside Planned Parenthood Federation. Custer Decl. ¶¶ 10, 19 [Doc. No. 5-1]. In other words, a statute that discourages membership in Planned Parenthood Federation has the effect of weakening its message. Consequently, Section 71113 causes irreparable harm to Planned Parenthood Federation in addition to its Members.

In sum, where Section 71113 burdens Non-qualifying Members' affiliation with other Planned Parenthood Members, it diminishes Planned Parenthood Federation's and those Members' associational expression and causes First Amendment injury. And because Section 71113 encourages Non-qualifying Members to disassociate from Planned Parenthood Federation upon its implementation, Plaintiffs have shown they will suffer imminent, irreparable harm in the absence of a preliminary injunction.

C.  *Balance of Hardships and the Public Interest*

The balance of hardships and public interest factors merge when the government is the opposing party. Nken v. Holder, 556 U.S. 418, 435 (2009) (factors merge in stay context); accord Massachusetts v. Nat'l Institutes of Health, 770 F. Supp. 3d 277, 295 (D. Mass. 2025) (factors merge in preliminary injunction context). Here, Plaintiffs argue that those factors favor preliminary injunctive relief because the public health consequences of Section 71113 will be dire. Pls.' Mem. 44 [Doc. No. 5]. Defendants contend that "Plaintiffs' proposed injunction threatens significant and irreparable harm to the Government and public" where it prevents implementation of "Congress['s] judgment about which entities it wishes to benefit from public funds." Defs.' Mem. 42 [Doc. No. 53].

There is a significant public interest in the implementation of duly enacted statutes. Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo, 18 F.4th 38, 47 (1st Cir. 2021) ("[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (alterations in original). At the same time, when social policy burdens the exercise of First Amendment rights, the public interest in protecting those rights may outweigh the public interest in allowing such policy to take effect. See Roman Cath. Diocese of Brooklyn, 592 U.S. 14, 19–20 (2020) (concluding injunctive relief was warranted where coronavirus mitigation restrictions "str[uck] at the very heart of the First Amendment's guarantee of religious liberty."). And in general, there is no public interest in the perpetuation of unlawful government action. See Somerville Pub. Sch. v. McMahon, 139 F.4th 63, 76 (1st Cir. 2025). For this reason, there is a public interest in Congress's judgment "about which entities it wishes to benefit from public

funds," only so long as that judgment does not violate the equal protection clause and the First Amendment.

Where Plaintiffs have demonstrated a substantial likelihood of success on constitutional claims premised on impingement of First Amendment associational rights, injunctive relief is in the public interest. See Roman Cath. Diocese of Brooklyn, 592 U.S. at 19–20. Additionally, as Defendants point out, the disruption in patient care and corresponding adverse health outcomes caused by Section 71113 are properly considered in evaluating the effect of preliminary injunctive relief on the public interest, see Defs.' Mem. 39 [Doc. No. 53]; Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 77 (1st Cir. 2005) (concluding district court appropriately found injunctive relief was in public interest where "any shut down of [FQHC health center] would adversely affect hundreds of Medicaid patients"), and those harms weigh in favor of injunctive relief. A preliminary injunction maintains Planned Parenthood Members' ability to seek Medicaid reimbursements—and maintain their status quo level of service to patients. And an injunction requiring Defendants to continue funding Medicaid reimbursements in accordance with the status quo imposes no additional Medicaid costs on Defendants, where there is no dispute that Medicaid funds will still be provided only for reimbursable healthcare services.

D. *Bond*

In accordance with the court's Amended Temporary Restraining Order [Doc. No. 46], Plaintiffs posted a nominal bond of $100. See Notice [Doc. No. 55]. Defendants argue that the court should further impose a bond in an amount "based on Planned Parenthood's estimates of the amount of Medicaid reimbursements its members receive each month." Defs.' Mem. 43 [Doc. No. 53].

Federal Rule of Civil Procedure 65(c) provides in relevant part: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The First Circuit has noted the "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond." Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc., 925 F.2d 6, 9 (1st Cir. 1991).

Here, in determining the amount of security, the court considers the costs and damages that Defendants would sustain if they were wrongfully enjoined. Defendants do not contend that Medicaid will have to reimburse more services because of the injunction but only that the reimbursement will be to disfavored providers rather than other providers. This would cause no monetary harm to the Medicaid program.

Additionally, the court finds that the constitutional harm to Members and the health consequences Medicaid patients who forego or cannot obtain care may suffer without a preliminary injunction outweigh any financial harm that Defendants might incur if they are wrongly enjoined.

Where Plaintiffs have already posted nominal bond under the court's Amended Temporary Restraining Order [Doc. No. 46], the court finds no additional bond necessary while a preliminary injunction is in place.

E.  *Stay Pending Appeal*

Defendants request that any injunctive relief be stayed pending appeal. Defs.' Mem. 44 [Doc. No. 53]. A district court may stay injunctive relief while an appeal is pending. Fed. R. Civ.

P. 62(d). "A stay is not a matter of right, even if irreparable injury might otherwise result." Nken, 556 U.S. at 433 (2009) (citation omitted).

> In determining whether to stay an order pending appeal, courts consider
>
> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Id. at 426. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 433–34. "The first two factors . . . are the most critical. It is not enough that the [applicant's] chance of success on the merits be 'better than negligible.'" Id. at 434 (quoting Sofinet v. INS, 188 F.3d 703, 707 (7th Cir. 1999)).

Defendants have not shown that a stay should issue. Above, the court has concluded that Plaintiffs have shown a substantial likelihood of success on their equal protection claim based on their showing that Section 71113 draws a classification that burdens Plaintiffs' and Planned Parenthood Members' First Amendment rights. Accordingly, Defendants have not made a strong showing that they are likely to prevail on appeal.

The court has also concluded that enjoining enforcement of Section 71113 will risk at most minimal harm—financial or otherwise—to Defendants. Further, staying the preliminary injunction burdens Plaintiffs and Planned Parenthood Members with an immediate choice between exercising their associational rights and maintaining eligibility for Medicaid reimbursements. A stay should not issue where it would leave Plaintiffs unprotected from First Amendment injury. See Murthy v. Missouri, 601 U.S. __, 144 S. Ct. 7, 9 (2023) (Alito, J., dissenting) (disagreeing with stay of preliminary injunction where stay "allows the defendants to persist in committing . . . First Amendment violations . . . ."). And in light of the First

34

Amendment injury and harm to patient care that will occur absent an injunction, the public interest does not favor staying relief.

**IV.    Conclusion**

For the foregoing reasons, Plaintiffs' <u>Emergency Motion for a Preliminary Injunction</u> [<u>Doc. No. 4</u>] is GRANTED in part and otherwise remains under advisement.

It is hereby ORDERED that:

1.    Defendants, their agents, employees, appointees, successors, and anyone acting in concert or participation with Defendants are hereby enjoined from enforcing, retroactively enforcing, or otherwise applying the provisions of Section 71113 of "An Act to provide for reconciliation pursuant to title II of H. Con. Res. 14," against Planned Parenthood Association of Utah and other Planned Parenthood Federation of America Members who will not provide abortion services as of October 1, 2025, or for which the total amount of Federal and State expenditures under the Medicaid program under title XIX of the Social Security Act for medical assistance furnished in fiscal year 2023 made directly to them did not exceed $800,000.

2.    Defendants, their agents, employees, appointees, successors, and anyone acting in concert or participation with Defendants shall take all steps necessary to ensure that Medicaid funding continues to be disbursed in the customary manner and timeframes to Planned Parenthood Association of Utah and other Planned Parenthood Federation of America Members who will not provide abortion services as of October 1, 2025, or for which the total amount of Federal and State expenditures under the Medicaid program under Title XIX of the Social Security Act for medical assistance furnished in fiscal year 2023 made directly to them did not exceed $800,000.

3.      Defendants shall provide a copy of this Order to all personnel within the Department of Health and Human Services and all state agencies involved with the disbursement of Medicaid funding.

4.      Plaintiffs' nominal $100 bond posted with the court on July 15, 2025, will continue to be held by the court as the bond in this matter.

IT IS SO ORDERED.

July 21, 2025                              /s/Indira Talwani_____
                                          United States District Judge

36

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, *et al.*,<br><br>    *Plaintiffs,*<br><br>        *v.*<br><br>ROBERT F. KENNEDY, JR., in his official capacity as SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>    *Defendants.* | Case No. 1:25-cv-11913 |

## <u>NOTICE OF APPEAL OF PRELIMINARY INJUNCTION</u>

PLEASE TAKE NOTICE that Defendants hereby appeal to the United States Court of Appeals for the First Circuit from the Court's July 21, 2025, Memorandum & Order, *see* ECF No. 62.

Dated: July 22, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ELIZABETH HEDGES
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division

MICHELLE R. BENNETT
Assistant Director
Federal Programs Branch

BRADLEY P. HUMPHREYS
JACOB S. SILER
ELISABETH J. NEYLAN
Trial Attorneys
Federal Programs Branch

/s/ *Emily M. Hall*
EMILY M. HALL
Counsel to the Assistant Attorney General
U.S. Department of Justice
950 Pennsylvania Ave NW
Washington, DC 20530
Telephone: (202) 307-6482
Email: emily.hall@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF.

Dated: July 22, 2025

/s/ *Emily M. Hall*
Emily M. Hall