Nos. 25-1698, 25-1755

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS; PLANNED PARENTHOOD ASSOCIATION OF UTAH,

*Plaintiffs-Appellees*,

v.

ROBERT F. KENNEDY, JR., in the official capacity as Secretary of the U.S. Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; MEHMET OZ, in the official capacity as Administrator of the Centers for Medicare & Medicaid Services; and CENTERS FOR MEDICARE AND MEDICAID SERVICES,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Massachusetts

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

BRETT A. SHUMATE
  *Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
DANIEL TENNY
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

    I.       The Government is Overwhelmingly Likely to Succeed on the Merits ............................................................................................................ 1

    II.      The Remaining Factors Favor a Stay ......................................................... 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION

Plaintiffs' response confirms that there is no persuasive basis for the district court's orders barring the government from enforcing an Act of Congress that establishes a new limit on Medicaid spending. On the merits, plaintiffs largely rehash the district court's flawed orders without engaging with the government's arguments. Plaintiffs insist that Congress enacted the Medicaid funding restriction to punish them for their expressive advocacy, yet they refute their own position by describing their members as, collectively, "the only nationwide abortion provider," which explains the legitimate reason why the statute applies largely but not exclusively to them. Resp. 10. Plaintiffs' claim regarding congressional intent relies chiefly on the post-enactment statement of an Executive Branch employee that did not purport to address Congress's motives. On the equities, plaintiffs disregard the Supreme Court's repeated statements that a stay is warranted in virtually every case in which a court enjoins enforcement of an Act of Congress. This Court should stay the injunctions pending appeal.

## ARGUMENT

**I.     The Government Is Overwhelmingly Likely to Succeed on the Merits**

**A.** Plaintiffs' lead argument is that the Medicaid funding restriction satisfies the Supreme Court's stringent test for applying the Bill of Attainder Clause. Plaintiffs do not dispute that on its face, the statute does not single them out for punishment based

on their past conduct but instead imposes a prospective restriction on the receipt of Medicaid funds by certain abortion providers. Nor do plaintiffs dispute that such a restriction would not constitute a bill of attainder.

Instead, plaintiffs claim that, despite its text, Section 71113 is actually an effort to "punish[]" them for "advocat[ing] for sexual and reproductive rights." Resp. 9. But their filing illustrates the absence of any evidence supporting that claim—much less evidence strong enough to overcome the statute's text—and in fact reinforces Congress's legitimate purposes.

Plaintiffs emphasize that Planned Parenthood members serve "millions of people" and that "collectively" they are "the only nationwide abortion provider." Resp. 3, 10. It is natural that in seeking to halt taxpayer funding for abortion providers, Congress would adopt a limitation that applies to "the only nationwide abortion provider" Resp. 10, in addition to—as plaintiffs concede, Resp. 6—a few other entities with similar characteristics. That looks nothing like a bill of attainder, and everything like a restriction on the allocation of federal funds for entities engaged in conduct Congress disapproved. By contrast, plaintiffs are not the only nationwide abortion advocate, and like all other such advocates, they can continue to participate in Medicaid so long as they stop performing abortions.

Plaintiffs repeat (Resp. 12-13) the district court's suggestion that because federal law has long barred federal funding of abortion, Section 71113 serves no non-punitive purpose. But as the government previously explained, "[m]oney is fungible,"

2

and Congress was entitled to conclude that it does not want to contribute to abortion indirectly by allowing entities to allocate federal funds for other expenditures and use the savings to fund abortions. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 31 (2010). And more generally, Congress was entitled to conclude that it does not wish to support abortion providers. *See Rust v. Sullivan*, 500 U.S. 173, 192-93 (1991) (recognizing that "the government may 'make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds'").

Plaintiffs likewise struggle to explain why halting Medicaid funding to certain entities resembles the severe punishments understood as implicating the Bill of Attainder Clause. Like the district court, plaintiffs equate Section 71113 with historical laws "barring designated . . . groups from participation in specified employments." Resp. 12 (citation omitted). That argument fails on many levels: serving Medicaid patients is not a profession, plaintiffs remain free to provide healthcare to anyone they choose, and they can even use federal funds to do so if they cease performing abortions. The only circuit to have confronted a bill-of-attainder claim in remotely similar circumstances rejected it, in a case that plaintiffs do not address. *See* Mot. 8 (discussing *ACORN v. United States*, 618 F.3d 125, 137 (2d Cir. 2010)).

In addition to failing to show that Section 71113 imposes punishment, plaintiffs also cannot demonstrate that it qualifies as a bill of attainder for the independent reason that it refrains from designating "identifiable individual[s]" for

3

punishment. *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468 (1977). Plaintiffs do not dispute that Section 71113's application depends on an entity's activities "as of" several months after the Section's enactment. Pub. L. No. 119-21, 139 Stat. 72, 300 (2025). Plaintiffs contend, however, that even laws leaving "the *designated* parties a way of escaping the penalty" may nonetheless qualify as bills of attainder. Resp. 11 (quoting *United States v. Brown*, 381 U.S. 437, 442 (1965) (emphasis added)). That misses the point: as the Supreme Court has explained—in a case plaintiffs also fail to mention—a law such as Section 71113 that neither names particular individuals nor "attach[es] to the[ir] past and ineradicable actions" does not operate as a designation of persons. *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 87-88 (1961). As we explained in our motion, the only past action relevant to the application of Section 71113 is the receipt of a specified amount of Medicaid funds in 2023, and plaintiffs cannot seriously suggest that Congress intended to punish anyone for that.

The lack of support for plaintiffs' argument is apparent in their assertion (Resp. 1) that Section 71113 was "concededly crafted to punish Planned Parenthood for its political advocacy." "[O]nly the clearest proof" could justify such a claim. *Flemming v. Nestor*, 363 U.S. 603, 617 (1960). Yet plaintiffs rely (Resp. 1, 12) on a Department of Health and Human Services employee's statement, made in response to the district court's first order, that "States should not be forced to fund organizations that have chosen political advocacy over patient care." Resp. 1 (citation omitted). An

4

Executive Branch employee's statement that did not purport to address legislative intent and that was made after Section 71113's enactment is irrelevant to discerning Congress's motivation, and does not remotely "concede" anything about that motivation. Similarly unhelpful to plaintiffs is their focus (Resp. 4) on Speaker Johnson's remark that "this bill is going to redirect funds away from Big Abortion." That statement is fully consistent with Congress's non-punitive objective of halting the flow of taxpayer dollars to abortion providers.

**B.** Plaintiffs' theory that Section 71113's reference to an entity's "affiliates" transforms the entire provision into an intrusion on First Amendment association confuses a regulation of corporate affiliates with a restriction on expressive association and would not in any event justify the expansive relief entered by the district court.

Plaintiffs' response is notable for its refusal to grapple with the government's arguments. The government explained that Section 71113's text and structure establish that the affiliate provision refers to corporate affiliates, not associates engaged in joint expression. Mot. 13-15. The government also explained that Congress often employs similar provisions to prevent regulated entities from using the corporate form to evade statutory requirements. Mot. 14-15. And the government

5

explained that such provisions have never been understood as raising First Amendment concerns. *Id.* Plaintiffs have no response to any of these points.

Instead, plaintiffs rehash the district court's mistaken analysis. They claim, for instance, that there is no "evident link between such affiliation and 'subsidizing abortion.'" Resp. 15. In the absence of the affiliate provision, however, a prohibited entity could create affiliates and use them to obtain Medicaid funds, frustrating Congress's objective of withholding taxpayer dollars from certain large abortion providers. And affiliated entities often have interconnected finances, exacerbating Congress's concern regarding subsidizing abortion. That is why Congress frequently extends statutory requirements to regulated entities' affiliates. *See* Mot. 14-15 (collecting examples).

Plaintiffs also repeat the district court's error of conflating a regulation of corporate affiliates with a restriction on expression. Plaintiffs emphasize that "Planned Parenthood Federation advocates before Congress," "communicates with the public," "supports campaigns," and "supports candidates for [elected office]." Resp. 14. Missing from plaintiffs' response, however, is any explanation as to why those activities matter to Section 71113. The operation of that Section's affiliate provision does not turn on whether entities engage in joint advocacy.

Plaintiffs' error is highlighted by their assertion (Resp. 18) that there is no relevant difference between a law intended to punish advocacy and a law preventing regulated entities "from shuffling funds between corporate sub-entities." Plaintiffs

6

apparently believe that every statutory reference to corporate affiliates that has any incidental effect on expression "directly restrains First Amendment freedoms." Resp. 18. On that theory, the numerous state and federal laws referring to corporate affiliates would presumably be susceptible to as-applied First Amendment challenges. As the Supreme Court has explained, however, laws that incidentally burden expression raise no First Amendment concern where the government regulates for reasons unrelated to expression. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 707 (1986). Plaintiffs depict a different Supreme Court case as holding that "[i]nnocent motives" are irrelevant to First Amendment analysis, Resp. 18, but that case actually states that "innocent motives do not eliminate the danger of censorship presented by a facially content-based statute," *Reed v. Town of Gilbert*, 576 U.S. 155, 167 (2015). That proposition has no relevance here, where Section 71113 applies without regard to expression—much less content.

It is likewise error for plaintiffs to claim (Resp. 18-19) that the government has offered "contradictory" interpretations of the affiliate provision. In this Court and the district court, the government cited the same dictionary definition and emphasized that affiliates are generally subject to the same corporate control. *See* Mot. 14; Dkt. No. 53, at 27-28 (Gov't PI Opp'n) (both citing the Black's Law Dictionary definition of affiliate). Planned Parenthood members that do not perform abortions may satisfy that definition because they are subject to standards set by the parent organization. *See* Gov't PI Opp. 28-29. In any event, the critical point is that the government has

7

never suggested that an entity's status as an affiliate depends on whether it engages in joint advocacy.

At a minimum, plaintiffs' arguments regarding the affiliate provision do not support the district court's second injunction, which sweeps far beyond the small number of Planned Parenthood members that may qualify only as affiliates. Plaintiffs do not explain why they think that, if the injunction were narrowed, Planned Parenthood members could not "escape sanction merely by altering their own behavior and instead must renounce their relationships with one another." Resp. 16. If Section 71113 were enjoined as to non-abortion-providing members, they could maintain their relationships with the other, abortion-providing members, and those other members could easily "escape sanction merely by altering their own behavior"—namely, by ceasing to provide abortions.

In addition to relying on a flawed First Amendment theory, plaintiffs' equal-protection and unconstitutional-conditions arguments reflect other errors. As to the equal-protection claim, plaintiffs cursorily assert that Section 71113 "fails even rational basis review," Resp. 15, but they make no attempt to apply the highly deferential standard governing such claims, *see González-Droz v. González-Colón*, 660 F.3d 1, 9 (1st Cir. 2011). As to the unconstitutional-conditions claim, plaintiffs characterize Section 71113 as placing "a condition on the recipient of the subsidy rather than on the [federal] program." Resp. 17 (quoting *Rust*, 500 U.S. at 197). But as we previously explained, Congress was making funding decisions—which are

indisputably within the challenged program—based on a complete understanding of how federal funds might directly or indirectly contribute to abortions given the fungibility of money.

**C.** Plaintiffs cannot sustain the injunctions based on a First Amendment retaliation claim that the district court did not adopt. *See* July 28 Order 49 (declining to reach this claim). To support this claim, plaintiffs would need to demonstrate that Congress enacted Section 71113 in retaliation for Planned Parenthood's expressive advocacy. As an initial matter, a general "principle of constitutional law" bars courts from "strik[ing] down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). Regardless, plaintiffs come nowhere near demonstrating that "intentional animus against Planned Parenthood's message" motivated Congress to enact Section 71113. Resp. 20. As discussed, Section 71113 applies without regard to expression, and plaintiffs fail to show that animus motivated even a single legislator, much less a 535-member legislative body. *See supra* pp. 2-5.

**D**. Similarly meritless is plaintiffs' assertion that the stay motion "is procedurally improper because [the government's] motion for a stay pending appeal remains pending before the district court." Resp. 8. Federal Rule of Appellate Procedure 8 requires only that parties "ordinarily move first in the district court" and that if a motion is made in district court, the motion in the court of appeals state either that the district court "denied the motion" or "failed to afford the relief

9

requested." That standard is satisfied here. In opposing plaintiffs' preliminary-injunction motion, the government requested that the district court stay any injunction pending appeal. As plaintiffs acknowledge, the district court "twice denied" that request. Resp. 8. Out of an abundance of caution, on August 7, the government filed a separate motion renewing its request for a stay and asking that the district court rule by August 11. Dkt. No. 85. On August 11, however, the court directed plaintiffs to file a response by August 21 and indicated that it would not rule until after that filing. Dkt. No. 87. The district court thus "failed to afford the relief requested." Fed. R. App. P. 8(a)(2). Nothing in Rule 8 requires the government to wait two weeks (or more) for a third district court ruling before seeking relief in this Court.

## II. The Remaining Factors Favor a Stay

Plaintiffs ignore (*see* Resp. 21) the numerous Supreme Court opinions recognizing that a stay should be a matter of course when a court enjoins the enforcement of an Act of Congress. *See* Mot. 19-20 (citing cases). Plaintiffs thus provide no explanation whatsoever for why this case should be the exception to the rule that in "virtually all" cases where a lower court has held a federal statute unconstitutional, an appellate court should "grant[] a stay if requested . . . by the

Government." *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers).

At the same time that plaintiffs disregard the government's injuries, they substantially overstate their own asserted harms. Plaintiffs' meritless First Amendment claims provide no basis for irreparable harm. And although plaintiffs contend (Resp. 22) that a stay may prompt them to "cut back on services, lay off staff, and perhaps close," they have no cognizable interest in obtaining federal funds to which they are not legally entitled. Regardless, plaintiffs nowhere explain why they could not continue to provide services using funding sources other than taxpayer dollars.

Plaintiffs' cursory suggestion (Resp. 2) that the government has "delayed" seeking a stay is meritless. The government preemptively requested that the district court enter a stay in its opposition to plaintiffs' preliminary-injunction motion and is proceeding with dispatch to ensure that this Court (and if necessary, the Supreme Court) can consider the stay application before prohibited entities can begin to be identified on October 1. *See* 139 Stat. at 300. And plaintiffs make no effort to reconcile their contention that the government has unduly delayed its request with their mistaken assertion that the government's motion is premature. The issue is

11

timely and properly before this Court and the Court should address it with dispatch to provide needed clarity.

## CONCLUSION

The Court should stay the injunctions pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
LEAH B. FOLEY
  *United States Attorney*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
DANIEL TENNY

 */s/ Steven H. Hazel*
STEVEN H. HAZEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7217*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2498*
  *Steven.H.Hazel@usdoj.gov*

August 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the motion contains 2,595 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

                                                                    */s/ Steven H. Hazel*
                                                                    STEVEN H. HAZEL

# CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

                                                                   */s/ Steven H. Hazel*
                                                                   STEVEN H. HAZEL