Nos. 25-1698, 25-1755

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC.; PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS; and PLANNED PARENTHOOD ASSOCIATION OF UTAH,

*Plaintiffs-Appellees*,

*v.*

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services; and CENTERS FOR MEDICARE AND MEDICAID SERVICES,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Massachusetts in Case No. 1:25-cv-11913

### *Amicus Curiae* Landmark Legal Foundation's Brief In Support of Appellants' Opposition To Preliminary Injunction

Ronald D. Coleman
COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
(973) 264-9611
rcoleman@colemanlaw-pc.com
*Counsel of Record*

Michael J. O'Neill
Matthew C. Forys
Richard P. Hutchison
LANDMARK LEGAL FOUNDATION
19415 Deerfield Ave. Ste. 312
(703) 554-6105
mike@landmarklegal.org
*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Landmark Legal Foundation (Landmark) is a non-profit legal corporation committed to separation of powers and the rule of law.  Landmark has no parent corporation and issues no stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT…………………………….. ii

TABLE OF AUTHORITIES……………………………………………… iv

STATEMENT OF INTEREST OF *AMICUS CURIAE*…………………. 1

INTRODUCTION……………………………………………………….. 1

ARGUMENT…………………………………………………………….. 2

    A. The District Court improperly concluded that Section
       71113 constitutes an unlawful bill of attainder…………………. 2

    B. Section 71113 does not single out or specify Planned
       Parenthood…………………………………………...………… 5

    C. There is no historical precedent supporting the District
       Court's decision that Section 71113 is punitive……..………… 10

    D. Congress included Section 71113 in the Big Beautiful
       Bill to end Medicaid funding for certain abortion providers,
       not to punish Planned Parenthood…………..…………………13

CONCLUSION……………………………………...………………… 16

CERTIFICATE OF COMPLIANCE……………...………………… 17

CERTIFICATE OF SERVICE…………………………..…………….. 18

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*ACORN v. United States*,
    618 F.3d 125 (2d Cir. 2010)…………………………………… 4, 12, 13

*Am. Commc'ns Ass'n. v. Douds*,
    339 U.S. 382 (1950)…………………………………………… 11

*Barenblatt. v. United States*,
    360 U.S. 109 (1959)…………………………………………… 4

*Communist Party of U.S. v. Subversive Activities Control Bd.*,
    367 U.S. 1 (1961)…………………………………………… 5, 7, 8

*Consol. Edison Co. of N.Y., Inc. v. Pataki*,
    292 F.3d 338 (2d Cir. 2002)……………………………….…. 12

*Flemming v. Nestor*,
    363 U.S. 603 (1960)……………………………………….. 11

*Foretich v. United States*,
    351 F.3d 1198 (D.C. Cir. 2003)………………………………… 14

*Kaspersky Lab, Inc. v. United States Dep't of Homeland Security*,
    909 F.3d 446 (D.C. Cir. 2018)……………………….……... 4, 13, 14

*Kilbourn v. Thompson*,
    103 U.S. 168 (1881)…………………………………………… 1

*Nixon v. Administrator of General Services*,
    433 U.S. 425 (1977)………………………………….……. 11, 13

*Patchak v. Zinke*,
    583 U.S. 244 (2018)…………………………………………… 1

iv

**Cases Cont.**                                                    **Page(s)**

*Seariver Mar. Fin. Holdings v. Mineta*,
    309 F.3d 662 (9th Cir. 2002)............................................................. 5

*Selective Serv. System v. Minnesota Pub. Int. Rsch. Group*,
    468 U.S. 841 (1984)…………………………………………… 5, 10

*The Family Plan. Ass'n of Me. v. U.S. Dept. Of Health
and Human Servs.*, No. 25-cv-364, 2025
    U.S. Dist. LEXIS 164106 (D. Me. Aug. 25, 2025)........................... 6

*United States v. Lovett*,
    328 U.S. 303 (1946)………………………………………..... 5, 10, 11


**Statutes & Regulations**

45 C.F.R. §156.235…………………………………………………….. 2

Continuing Appropriations Resolution, 2010, Pub. L.
    No. 111-68, Div. B, § 163, 123 Stat. 2023 (2009)……………… 13

Internal Revenue Code § 501(c)(3)…………………………………….. 2

One Big Beautiful Act,
    Pub. L. No. 119-21, 139 Stat. 72 (2025)... 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15


**Other Authorities**

171 Cong. Rec. S4051 (daily ed. June 30, 2025)
    (statement of Sen. Cindy Hyde-Smith)………………………… 15, 16

Planned Parenthood, *2023-2024 Annual Report*…………………….…… 6

Raoul Berger, *Bills of Attainder: A Study of Amendment
by the Court*, 63 Cornell L. Rev. 355 (1978)……………………… 10

*The Federalist No. 47* (James Madison) (C. Rossiter ed., 1961)…………. 1

v

## STATEMENT OF INTEREST OF *AMICUS CURIAE*[1]

Landmark Legal Foundation ("Landmark") is a national public interest law firm committed to preserving the principles of limited government, separation of powers, federalism, advancing an originalist approach to the Constitution, and defending individual rights and responsibilities.  Specializing in constitutional history and litigation, Landmark submits this brief in support of Defendants-Appellants' Brief filed September 29, 2025.

## INTRODUCTION

The Constitution establishes three branches of government, each with distinct powers.   "Each branch 'exercise[s] . . . the powers appropriate to its own department,' and no branch can 'encroach upon the power confided to the others.'" *Patchak v. Zinke*, 583 U.S. 244, 250 (2018) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 191 (1881)).  Separating powers "prevents '[t]he accumulation of all powers, legislative, executive, and judiciary, in the same hands…'" *Id*. (quoting *The Federalist No. 47*, (James Madison) (C. Rossiter ed., 1961)).

---

[1] The Parties have consented to the submission of this brief.  No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than *Amicus Curiae*, its members, or its counsel made a monetary contribution to its preparation or submission.

1

Congress validly exercised its Article I authority when it made the reasonable decision to end Medicaid funding for certain abortion providers by conditioning receipt of Medicaid funding on the cessation of performing elective abortions. This legitimate use of power is not subject to second-guessing by the judiciary. And the lower court undermined this authority by issuing an order enjoining Defendants-Appellants from enforcing a duly enacted statute. Dkt. No. 69 ("Mem. and Order").

The Court should therefore find that the lower court erred in concluding that the Section 71113 of the One Big Beautiful Bill Act ("BBB"), constituted an unlawful bill of attainder and direct the lower court to rescind its preliminary injunction.

## ARGUMENT

### A. The District Court improperly concluded that Section 71113 constitutes an unlawful bill of attainder.

Section 71113 of the BBB, Pub. L. No. 119-21, 139 Stat. 72 (2025) withdraws all Medicaid funding from certain "prohibited entities," defined as those that (1) have tax-exempt status under Internal Revenue Code section 501(c)(3); (2) are "essential community providers" under 45 C.F.R. § 156.235 "primarily engaged in family planning services, reproductive health, and related medical care"; (3) provide abortions to clients other than in the case of rape or incest or a

2

pregnancy that exposes a woman to the "danger of death"; and (4) received in excess of $800,000 in Medicaid funding in fiscal year 2023.  BBB § 71113(b)(1).  Funding, in other words, only is withdrawn if the organization continues to provide elective abortions.

The District Court granted Plaintiffs' Emergency Motion for a Preliminary Injunction, in part, by concluding that there was a substantial likelihood that Plaintiffs would succeed in their allegation that Section 71113 constituted an unlawful bill of attainder.  Mem. and Order at 3.  In sum, the District Court held that the provisions of Section 71113 satisfied the two factors necessary to amount to a bill of attainder.  First, The District Court concluded that Congress specified Planned Parenthood as the entity affected by Section 71113's provisions.  And second, it found that Section 71113's provisions depriving Planned Parenthood of Medicaid funding comprised a legislative punishment.  Mem. and Order at 36.

This ruling fails to meet legal muster for several reasons.  One, there is insufficient evidence and precedent to support a finding that Congress intended to single out Planned Parenthood when enacting Section 71113.  At best, Planned Parenthood only partially satisfies the second of the four "guideposts" used by the District Court when determining whether "legislation singles out a person or class within the meaning of the Bill of Attainder Clause."  Mem. and Order at 32.  And even then, there is sufficient evidence to suggest that Section 71113 was intended

3

to end Medicaid funding for certain abortion providers—not to single out Planned Parenthood and its affiliates.

Two, the District Court erred in concluding that Section 71113 inflicts an improper punishment on Planned Parenthood. At no point did the District Court identify a controlling decision where a court concluded that congressional action defunding a class of organizations having no contractual rights amounted to a "punishment" violative of the Bill of Attainder Clause. Indeed, there are several circuit court cases concluding that deprivations of federal funding *did not* amount to an unlawful bill of attainder. See, *ACORN v. United States*, 618 F.3d 125 (2d Cir. 2010), *Kaspersky Lab, Inc. v. United States Dep't of Homeland Security*, 909 F.3d 446 (D.C. Cir. 2018). In conflict with these decisions, the District Court concludes that Section 71113 imposes a "conditional exclusion" on Planned Parenthood which amounts to a legislative punishment. Mem. and Order at 38.

Congress has plenary power to appropriate funds as it sees fit. This includes placing reasonable conditions on private organizations that receive public funds to advance a legitimate state purpose. And "[s]o long as Congress acts in pursuance of its constitutional power, the Judiciary lacks authority to intervene on the basis of the motives which spurred the exercise of that power." *Barenblatt. v. United States*, 360 U.S. 109, 132 (1959). Courts may not second guess these decisions by classifying them as bills of attainder.

4

**B. Section 71113 does not single out or specify Planned Parenthood.**

As stated above, the District Court employed four "guideposts" used by the Supreme Court in determining whether Congress intended to single out a particular entity. Mem. and Order at 32. First, did the statute or provision specifically name the individual or class or does it generally describe an affected group? *Selective Serv. System v. Minnesota Pub. Int. Rsch. Group*, 468 U.S. 841, 847 (1984). Second, is the individual or group "easily ascertainable" from the statute's language? *United States v. Lovett*, 328 U.S. 303, 315 (1946). Third, does the legislation specify the individual or group based on "past conduct [that] operates only as a designation of particular persons"? *Communist Party of U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961). And fourth, is the class defined "entirely by irreversible acts committed by them"? *Selective Serv.* 468 U.S. at 848. Meeting any one of these guideposts is not enough to satisfy the question of whether the legislation singles out a person or class. And none of these factors are to be viewed in isolation. *Seariver Mar. Fin. Holdings v. Mineta*, 309 F.3d 662, 669 (9th Cir. 2002).

The first guidepost is inapplicable. Section 71113 does not name Planned Parenthood or its members.

As to the second guidepost, Section 71113 does not single out Planned Parenthood by its terms because other entities, specifically The Family Planning Association of Maine fall within its guidelines. See *The Family Plan. Ass'n of Me. v. U.S. Dept. Of Health and Human Servs.*, No. 25-cv-364, 2025 U.S. Dist. LEXIS 164106 (D. Me. Aug. 25, 2025). Moreover, *any* congressional effort to cut Medicaid funding for entities that provide elective abortions will inevitably affect Planned Parenthood as it and its member affiliates provide hundreds of thousands of abortions annually, and a significant percentage of their patients are Medicaid recipients. Planned Parenthood, *2023-2024 Annual Report*.[2] The District Court failed to properly weigh this fact of record when considering the second guidepost.

The District Court's analysis of the application of the facts here to the third guidepost—whether the legislation specifies the individual or group based on past conduct that operates only as a designation of particular person—is also erroneous. To be subject to Section 71113's provisions, Planned Parenthood must *continue* to provide abortions after October 1, 2025. BBB § 71113(b)(1)(A)(iii). The fact that Planned Parenthood performed elective abortions in the past *alone* does not trigger Section 71113. Rather, the statutory funding bar is conditioned on multiple criteria including whether the entity that performed elective abortions had received

---

[2] Available at https://www.plannedparenthood.org/uploads/filer_public/21/02/2102bd3b-92cc-405a-8abd-0cf144a88846/2024-ppfa-annualreport-c3-digital.pdf (Sept. 24, 2025).

$800,000 or more in fiscal in Medicaid funds in year 2023 and whether the entity continued to provide elective abortions after October 1, 2025.  BBB § 71113(b). Section 71113 will only apply should an entity, whether Planned Parenthood or any other, make the contemporaneous decision to continue to provide elective abortions after October 1, 2025.  *Id.*

Despite the District Court's assertions to the contrary, *Communist Party of U.S. v. Subversive Activities Control Bd.* applies.  In *Communist Party*, the Supreme Court *rejected* allegations that provisions of the Subversive Activities Control Act obligating the Communist Party to register with the Attorney General as a "Communist-action organization" amounted to an unlawful bill of attainer. *Communist Party*, 367 U.S. at 86.  Noting that the law did not attach "to specified organizations but to described activities in which an organization may or may not engage[]" the Court found that the incidents that would trigger registration requirements of the Subversive Activities Control Act were "present incidents." *Id.* at 86-87.  The Court continued, "the application of the registration section is made to turn upon continuingly contemporaneous fact; its obligations arise only because, and endure only so long as, an organization presently conducts operations of a described character."  Id. at 87.

The District Court recognizes, as it must, that in *Communist Party*, "the plaintiff organization could avoid the law's burden—a registration requirement—if

at any time it abandoned the activities triggering the requirement." Mem. and Order at 34. It does not, however, extend this rationale to Planned Parenthood, even though Planned Parenthood can avoid triggering Section 71113 by ceasing to perform elective abortions. The District Court, however, appears to conclude that providing elective abortions as of October 1, 2025, does not amount to a "continuingly contemporaneous fact." Mem. and Order at 35. This is error.

What the District Court failed to recognize is that the only way *Communist Party* would not control would be if Section 71113 simply cut Medicaid reimbursements for entities that performed elective abortions in 2023. Again, however, Planned Parenthood and its member affiliates hold the keys to their own fiscal jail cell: if they avoid conducting operations of a described character (performing elective abortions), they avoid losing Medicaid reimbursement. "So long as the incidence of legislation is such that the persons who engage in the regulated conduct, be they many or few, can escape regulation merely by altering the course of their own present activities, there can be no complaint of an attainder." *Communist Party*, 367 U.S. at 88. The District Court's contrary conclusion should be reversed.

On the fourth guidepost, the District Court is correct that Planned Parenthood and its affiliates cannot change the past, but it appears to conclude that Planned Parenthood's previous conduct of providing elective abortions is the sole

8

reason for Section 71113's application. It also mistakenly concludes that the effect of the legislation is to prohibit Planned Parenthood from providing elective abortions. Mem. and Order at 35. Respectfully, the effect of the legislation is to prevent the use of taxpayer funds to subsidize activities in Planned Parenthood locations that provide elective abortions—not to prohibit elective abortions. These groups are still free to provide elective abortions so long as they comply with state law. And, as stated previously, past conduct alone does not define application of Section 71113. Medicaid payments are only stopped if the Plaintiffs make the affirmative decision to continue to provide elective abortions after October 1. Despite assertions by the District Court to the contrary, Planned Parenthood can "escape the effect of the legislation" by ceasing to provide elective abortions.

At best, only the second of the four "guideposts" used by the lower court (whether the individual or group is "easily ascertainable" from the statute's language) might apply to Planned Parenthood. But because Planned Parenthood and its affiliates are one of the major entities that provide elective abortions to patients who receive Medicaid funding, any effort to limit the amount of taxpayer dollars that go to fund abortions (or offset costs to allow private groups to provide abortions) will invariably affect them. That fact does not make Planned Parenthood the subject of a bill of attainder.

### C. There is no historical precedent supporting the District Court's decision that Section 71113 is punitive.

At common law, a bill of attainder "was a legislative condemnation to death without trial for either treason or felony, accompanied by corruption of blood, i.e., 'the inheritable quality of [the traitor's] blood is extinguished and blotted out forever." Raoul Berger, *Bills of Attainder: A Study of Amendment by the Court*, 63 Cornell L. Rev. 355, 356 (1978) (internal citations omitted). While some scholars convincingly argue that the Constitution's prohibition on bills of attainder does not extend beyond its original common-law meaning, the Supreme Court has expanded it to exclude bills of pains and penalties. *Id*. Even still, Section 71113 does not fall within the Supreme Court's understanding of what constitutes the "historical meaning of legislative punishment." *Selective Serv.* 468 U.S. at 852.

Of the ten prominent Supreme Court cases on the Constitution's Bill of Attainder Clause, none directly addresses whether congressional defunding of a class of organizations without contractual rights to that funding in a non-criminal context can be considered an unlawful bill of attainder. Six of the ten cases fail to fit that description because they involved criminal law. Four of the ten concerned bills of attainder outside the criminal law context.

Only one of the four cases—*United States v. Lovett*—found a congressional statute violative of the Bill of Attainder clause and this case involved a claim for funding owed under a contract. *United States v. Lovett*, 328 U.S. 303 (1946). The

10

three other cases—*Am. Commc'ns Ass'n.*, *Fleming*, and *Nixon*—all found the respective statute at issue not to violate the Bill of Attainder Clause.[3]  And the most analogous case, *United States v. Lovett,* is easily distinguishable from the present case.  The statute at issue in *Lovett* prohibited federal funds from paying for the "salary or compensation" of the plaintiffs, all of whom were specifically listed in the statute.  *Id*. at 305.  The Supreme Court held that Congress improperly enacted a bill of attainder punishing the plaintiffs precisely because it cut "off the pay of certain named individuals found guilty of disloyalty" without a judicial trial.  *Id*. at 316.  In *Lovett*, Congress also held a secret "executive session" to determine the guilt or innocence of accused subversives.  *Id*. at 310-311.  The congressional record was clear in showing congressional intent to punish the individuals.  *Id*.  The *Lovett* Court also emphasized that the plaintiffs were owed compensation because of their employment as federal employees.  *Id*. at 314.  While Congress was acting within its constitutional power to appropriate funds for any purpose, it was not permitted to forgo payment to particular contracted federal employees.  *Id*. at 318.

In contrast, the present case concerns a statute that does not single out or mention by name, Planned Parenthood or its member affiliates.  Also, as a recipient

---

[3] *Am. Commc'ns Ass'n. v. Douds*, 339 U.S. 382 (1950), *Flemming v. Nestor*, 363 U.S. 603 (1960), *Nixon v. Administrator of General Services*, 433 U.S. 425 (1977).

of Medicaid funds, there is no apparent basis to characterize these entities as having contractual rights to receive monies from the government. Finally, here was no secret "executive session" at which Congress determined to deprive Planned Parenthood of federal funds. Thus, unlike in *Lovett*, there was no targeting here. Instead, Planned Parenthood, its affiliates and other affected organizations have a choice: continue to provide elective abortions and forfeit Medicaid, or cease performing elective abortions and maintain access to these funds.

Beyond Supreme Court jurisprudence, at least one circuit court has rejected claims by a non-profit organization that acts of Congress prohibiting federal agencies from providing that organization funds amounted to an unlawful bill of attainder. In *ACORN v. United States*, 618 F.3d 125 (2d Cir. 2010), the Second Circuit concluded that a congressional decision to withhold appropriations to a non-profit "[did] not constitute a traditional form of punishment that is 'considered to be punitive per se.'" *Id*. at 137 (quoting *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 351 (2d Cir. 2002)). Also, directly applicable, the Second Circuit concluded that "the plaintiffs are not prohibited from any activities; they are only prohibited from receiving federal funds to *continue* their activities." *ACORN*, 618 F.3d at 137 (emphasis added).

The alleged "punishment" in the present case is even less burdensome than in *ACORN*. Planned Parenthood and its member affiliates are not completely cut off from receiving funding. Rather, they are only prohibited from receiving federal funds if they continue to perform elective abortions. Should they make the affirmative decision to cease these actions, they will again be eligible to receive funds. The ban on the receipt of federal funds upheld in *ACORN*, however, was total: "None of the funds made available by this joint resolution or any prior Act may be provided to [ACORN], or any of its affiliates, subsidiaries, or allied organizations." *Id*. at 131 (quoting Section 163 of the Continuing Appropriations Resolution, 2010, Pub. L. No. 111-68, Div. B, § 163, 123 Stat. 2023, 2053 (2009)).

### D.   Congress included Section 71113 in the Big Beautiful Bill to end Medicaid funding for certain abortion providers, not to punish Planned Parenthood.

Courts will also apply a "functional test" when determining whether a given action amounts to a legislative punishment and thus constitutes an unlawful bill of attainder. This test looks to whether the challenged law, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Nixon*, 433 U.S. at 475-476. The functional test provides an "inferential tool; it does not impose an independent requirement." *Kaspersky Lab, Inc.*, 909 F.3d at 455. Further, "an imperfect fit between purpose and burden [imposed by the statute] does not necessarily prove punitive intent."

13

*Id.* Indeed, "the question is not whether a burden is proportionate to the objective, but rather whether the burden is so disproportionate that it 'belies any purported nonpunitive goals.'" *Id.* (quoting *Foretich v. United States*, 351 F.3d 1198, 1222 (D.C. Cir. 2003)).

As noted by the District of Columbia Circuit, "courts have considered a wide variety of factors in conducting this functional inquiry." But "[g]enerally speaking, these factors fall into two categories." *Kaspersky Lab, Inc.*, 909 F.3d at 455. One, when the statute in question is "significantly overbroad" it is more likely to fail the functional test and be considered an unlawful bill of attainder. Two, if a statute's "reach is underinclusive" or "seemingly burdens one among equals" it is again more likely to be considered an unlawful bill of attainder. Id. at 455-456.

The fact that Section 71113 is not based strictly on past activities shows that the statute is not overbroad. Again, if Congress had intended to punish Planned Parenthood and its member affiliates, it could have cut Medicaid funds for any entity that provided elective abortions in fiscal year 2023. It did not do this. Instead, Congress conditioned funding on an entity making the affirmative decision to cease performing elective abortions.

Section 71113 passes the second part of the functional test because Planned Parenthood and its member affiliates are not the only organizations affected. Moreover, as Planned Parenthood annually provides hundreds of thousands

14

abortions and with a large percentage of those patients using Medicaid, any statute affecting that funding will inevitably affect Planned Parenthood. Section 71113, in other words, does not burden "one among equals," i.e., Planned Parenthood alone—the classic definition of a bill of attainder. Rather, it affects *all* entities falling within its criteria. Conditioning the receipt of funding on whether an entity receives a threshold amount of Medicaid funding to reduce the number of elective abortions must, again, invariably affect Planned Parenthood because of the extent of its activities in this area.

Finally, there is evidence that Section 71113's goal is not to punish Planned Parenthood, but to end Medicaid funding for certain categories of abortion providers—a reasonable goal withing Congress's Article I authority. Senator Cindy Hyde-Smith defended Section 71113 as "establishing a commonsense protection of taxpayer dollars by prohibiting abortions providers from receiving Medicaid funds for one year." She continued, "There was a time when protecting Americans' tax dollars from supporting the abortion industry was an uncontroversial, nonpartisan effort that we could all get behind, even if we held opposing views on protecting the dignity of human life." Senator Hyde-Smith concluded, "This provision does not target any one entity. If a medical provider wishes to stay within the Medicaid Program, it should simply cut elective abortion

procedures from its services." 171 Cong. Rec. S4051 (daily ed. June 30, 2025) (statement of Sen. Cindy Hyde-Smith).

Ending Medicaid funding for certain abortion providers by conditioning the receipt of Medicaid funding on ceasing the performance of elective abortions is a legitimate legislative goal.   And courts should not second-guess this decision.  To do so, particularly by finding that the method by which Congress seeks to accomplish these goals amounts to an unlawful bill of attainder, goes too far.

## CONCLUSION

For these reasons, the Court should reverse the lower court's decision to grant Plaintiffs-Appellees preliminary injunction.

Respectfully submitted,

Ronald D. Coleman

COLEMAN LAW FIRM, PC
50 Park Place, Suite 1105
Newark, NJ 07102
973-264-9611
rcoleman@colemanlaw-pc.com

Michael J. O'Neill*
Matthew C. Forys*
Richard P. Hutchison*
LANDMARK LEGAL FOUNDATION
19415 Deerfield Ave., Suite 312
Leesburg, VA 20176

*Not admitted in this Circuit                    Counsel for Amicus Curiae

16

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(b) because it contains 3606 words, excluding parts of the Brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word for Office in a proportionally spaced 14-point Times New Roman font.

Date:  October 3, 2025

Ronald D. Coleman
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that on October 3, 2025, I electronically filed the foregoing

document with the United States Court of Appeals for the First Circuit by using the

CM/ECF system, which will send notification of that filing to all counsel of record

in this litigation.

_____

Ronald D. Coleman

*Counsel for Amicus Curiae*
